UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

03 11470 RCL

ISAAC WILLIAMS, JR.

v.   C.A. No.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY
(a/k/a MASSMUTUAL FINANCIAL GROUP) and
DAVID L. BABSON & COMPANY, INC.
(a/k/a DAVID L. BABSON AND COMPANY)

RECEIPT # 49518
AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK FORM
DATE 6/8/03

## VERIFIED COMPLAINT

1. Plaintiff, Isaac Williams, Jr. ("Williams"), is a resident of the City of Springfield, and a citizen of the Commonwealth of Massachusetts.

2. Defendant, Massachusetts Mutual Life Insurance Company (a/k/a MassMutual Financial Group) ("MassMutual") is also a Massachusetts corporation, having its offices and principal place of business at 1295 State Street, Springfield, Massachusetts 01101.

3. Defendant, David L. Babson & Company, Inc. (a/k/a David L. Babson and Company) ("Babson") is a Massachusetts corporation having its offices and principal place of business at One Memorial Drive, Cambridge, Massachusetts 02142.

4. Upon information and belief, Babson is a subsidiary and/or company related to MassMutual.

### Jurisdiction, Venue & Exhaustion of Administrative Remedies

5. Jurisdiction is vested in this Court pursuant to 42 U.S.C. 2000e, 42 U.S.C. 1981, and its pendant jurisdiction over related state claims or causes of action (28 U.S.C. 1367).

MAGISTRATE JUDGE _____

6. Venue is proper in this District pursuant to 42 U.S.C. 2000e - 5(f)(3) in that the unlawful employment practices in question have been committed in this District, that records relevant to such practices or actions are maintained and administrated in this district, and since all parties are citizens of and are located in this District.

7. Williams has exhausted his administrative remedies pursuant to 42 U.S.C. 2000e - 5(f)(3) by filing charges with the United States Equal Employment Opportunity Commission ("the EEOC"). The Commission has concluded its inquiry, issuing a Determination and Notice of Right to Sue which such Notice was received by Williams on May 9, 2003.

## Factual Background

8. Williams is African-American and, as such, is a member of a protected class or category within the meaning of the laws and statues made and provided in the circumstances described herein.

9. Williams first became employed by MassMutual as a Second Vice President on or about February 16, 1998.

10. Upon information and belief, while so employed, Williams and others were transferred by MassMutual to Babson, during the year 2000.

11. As a result of such corporate reorganization, Williams became a direct employee of Babson, yet MassMutual retained direction and control of all relevant employment practices described herein.

12. From the time that he first worked with MassMutual through the Fall of 2000, Williams performed up to his employers' legitimate job expectations, receiving raises, annual

bonuses and other forms of compensation commensurate with his contemporaries throughout such period of time.

13. In the fall of the year 2000, Edward Bickford, a caucasian ("Bickford"), became Babson's Director of Client Services, thus Williams' direct superior.

14. Soon after becoming Williams' superior, Bickford began referring to Williams as "boy", and acted in a condescending manner toward Williams.

15. Bickford supervised other, non African-American Babson employees, but did not refer to any such persons as "boy", or act in a condescending manner toward them.

16. Bickford assigned Williams unrealistic goals and responsibilities that did not constitute legitimate job expectations of Babson and/or MassMutual, could not be obtained or completed by any reasonably skilled and diligent employee, and could not be achieved despite Williams' best, determined efforts.

17. Williams brought Bickford's comments and behavior to the attention of members of Babson's senior management team, including Stewart Reese ("Reese"), Kevin McClintock ("McClintock") and Michael Foley ("Foley"). None of them took corrective action, despite acknowledging that Bickford was a "racist".

18. Other employees also referred to Bickford as a "racist", but senior management refused to take corrective action.

19. In January, 2002, Williams received a performance evaluation, which such assessment was completed and performed by Bickford.

20. The January, 2002 evaluation was the worst that Williams had received in his entire employment career, and at about that same time, Bickford recommended that Williams not receive an annual bonus.

21. During February, 2002, Williams complained to MassMutual's Human Resources Department ("HRD") about Bickford's racial remarks, the way he was being treated, the illegitimate job expectations being placed upon him, his poor, improper job performance evaluation and other adverse actions being taken against him. This was also brought again to the attention of senior management, all without any response.

22. Williams continued to report to Bickford and be subjected to Bickford's aforementioned actions up to and including March 12, 2002.

23. On or about March 13, 2002, Williams was asked to (and did) meet with Reese. At the time, Reese was the Chief Executive Officer of Babson and a Chief Investment Officer of MassMutual.

24. During Williams' meeting with Reese, Reese told Williams that he knew Williams had been treated unfairly. Reese told Williams "this is not about you", but that this was "just the way the organization is". Reese further stated that he was going to "hire new people" and thus could "no longer protect (Williams)".

25. During the meeting of March 13, 2002, Reese further advised Williams that his (Williams') job or position was going to be eliminated. Reese advised Williams that he should begin looking for other opportunities, both within MassMutual and elsewhere.

26. During the time period from March 14, 2002 through April 25, 2002, Williams reported to Reese and made numerous efforts within both Babson and MassMutual to locate another position.

27. While inquiring about the availability of another position, Williams spoke with James Miller ("Miller"), Executive Vice President of MassMutual, and was advised that there

were no positions available. Miller was the only person who agreed to meet with and/or discuss alternate employment opportunities with Williams.

28. Williams has recently learned that his position was not actually "eliminated" and that Miller and Reese were actually participating in a "scripted" effort to eliminate Williams without negative publicity since racially-motivated job actions of this type are "high profile" and embarrassing in the external world.

29. Upon information and belief, the actions of Miller and Reese were also designed and intended to create the impression that Williams was being treated fairly as well as to delay and/or lessen any potential discrimination or other claims that Williams might have against Babson and MassMutual.

30. On or about April 26, 2002, Williams met with a representative of HRD and a lawyer who identified himself as Staff Counsel for MassMutual and discussed matters pertaining to recruiting efforts Williams had made on behalf of MassMutual.

31. Babson and MassMutual have subsequently claimed (to the EEOC) that Williams did not return to work following the meeting that day.

32. On Monday morning, April 29, 2002, Williams reported to work but after working for about two (2) hours, suffered chest pains and went to the Bay State Medical Center ("Bay State").

33. At Baystate, Williams came to be under the care of a physician who determined that he was medically unable to continue to perform his duties. She so advised Babson and MassMutual in a letter dated that same day.

34. Williams has not thereafter returned to work for either Babson or MassMutual and (as of the date of this complaint) remains disabled and under the care of the same physician.

35. Williams has subsequently requested copies of his personnel file and records.

36. Williams received purported copies of his personnel records on or about June 27, 2002 at which time he learned for the first time of repeated interaction between Bickford, Reese and the HRD, all of which was designed to assist Bickford's efforts in having Williams demoted and/or eliminated/fired from his position.

37. A portion of the records in the personnel file have been obscured, so that Williams is unable to determine its complete content and whether it may include additional evidence of this ongoing pattern of hostile action.

38. Despite being made aware of his complaints concerning his personnel records, neither Babson nor MassMutual have furnished un-obscured (or un-redacted) records.

39. Numerous other African-American, executive-level (and other) MassMutual employees have been terminated and/or resigned (without other employment prospects and in much disparate fashion than has been the case with other employees of different ethnic backgrounds) during the period from the Fall of 2000 to the present.

40. Williams presented a claim, which was received by the EEOC on December 10, 2002.

41. Following its investigation, the EEOC issued its findings in a letter dated May 7, 2003, which was mailed the following day and received by Williams on Friday, May 9, 2003.

42. Defendants knew or should have known the actions of Bickford and others was improper, discriminatory, not aimed at furthering any legitimate job goals or expectations of either Babson or MassMutual.

43. The defendants have established and allowed to exist an unwritten, yet real, policy of content - based discrimination and selective treatment of African-American employees through the pretextural use of their employment reviews and procedures. While not reduced to written form nor officially promulgated in any perceptible manner, these policies are universally understood and consistently utilized by senior management and have been allowed to become an accepted type of conduct and practice as applied to African-American employees.

44. The time that Williams was given to find another position (4-6 months) has expired, thus despite the fact that he remains on disability he has been constructively and/or actually discharged from his employment.

45. While disabled, defendants have had Williams placed under surveillance at his place of worship (and, possibly, other locations).

46. The actions or inactions of the defendants in causing or allowing the aforementioned to occur have proximately resulted in Williams having suffered a loss of employment, income, earnings, bonuses, and of good health. These losses are of a continuing, ongoing nature.

47. All preceding paragraphs of this Complaint are restated and incorporated, by reference, in each count which follows.

## COUNT I

### (Violation of Title VII of the Civil Rights Act of 1964, as amended)

48. The individual and collective actions of the defendants toward Williams had the effect of unreasonably interfering with and altering the conditions of his employment and creating an intimidating or offensive working environment, resulting in adverse, tangible job consequences as aforesaid in violation of 42 U.S.C. §2000e, et seq.

49. Williams is accordingly entitled to compensatory and/or exemplary damages in accordance with the law and procedures made and provided under such circumstances.

## COUNT II

### (Violation of Title VII of the Civil Rights Act of 1964, as amended)

50. The individual and collective actions of the defendants toward Williams had the effect of unreasonably interfering with and altering the conditions of Williams' employment, adversely affecting his job status, remuneration or benefits based upon solely upon his membership in a protected class or category.

51. Williams is accordingly entitled to compensatory and/or exemplary damages in accordance with the law and procedures made and provided under such circumstances.

## COUNT III

### (Violation of 42 U.S.C. §1981 - Disparate Treatment)

52. Defendants have maintained and implemented a system through which they have discriminated against African-American employees generally and Williams in particular by denying the full and equal benefits of all laws and proceedings for his security and property as is enjoyed by white employees.

53. Williams has accordingly been denied full and equal benefit of all proceedings for his security, including the making, performance, modification and termination of his employment conditions and contract, as well as the enjoyment of all benefits, privileges, terms and conditions of his employment relationship.

54. These discriminatory denials of equal protection, treatment and compensation have caused Williams harm, for which he is entitled to compensation.

55. Defendants have undertaken these discriminatory practices willfully and/or with reckless disregard for and in violation of Williams' rights protected under 42 U.S.C. 1981.

56. Williams is accordingly entitled to compensatory and/or exemplary damages in accordance with the law and procedures made and provided under such circumstances.

## COUNT IV

### (Violation of State Anti-Discrimination Statute M.G.L. c.151B)

57. The individual and collective actions of the Defendants toward Williams, the effect of discharging him from employment and/or discriminating against him in compensation or in terms, conditions or privileges of his employment, based upon his race, not any bona fide occupational or other qualification.

58. Such actions of the Defendants are in violation of 151B §4 of the General Laws of Massachusetts, entitling him to all damages and relief made and provided in such circumstances.

59. Williams is accordingly entitled to compensatory and/or exemplary damages in accordance with the law and procedures made and provided under such circumstances.

## COUNT V

### (Infliction of Mental Distress)

60. The individual and collective actions of the Defendants, including those ongoing efforts made at their direction and/or on their behalf to conduct "surveillance" on Williams, have constituted both negligent and intentional infliction of emotional distress upon Williams.

61.     Such actions and conduct of the Defendants have caused deleterious effect on Williams' well-being, directly resulting in his having sustained anxiety, depression, mental distress and related symptomatology, further damages and being otherwise greatly damnified.

62.     Williams is accordingly entitled to compensatory and/or exemplary damages in accordance with the law and procedures made and provided under such circumstances.

WHEREFORE, Williams demands judgment against Defendants to include back and/or future pay and other job benefits (including lost bonus amounts) sufficient to make him whole, punitive and compensatory damages, reasonable attorney fees and costs (including expert fees) pursuant to 42 U.S.C. 2000e and 42 U.S.C. 1988, a trial, by jury, on all issues so triable, and such further relief as may be appropriate in the circumstances.

> Isaac Williams, Jr.
> by his Attorney,
>
> John B. Reilly, Esq. (#545576)
> John Reilly & Associates
> Summit West - Suite 330
> 300 Centerville Road
> Warwick, Rhode Island 02886
> (401) 739-1800
> Fax: (401) 738-0258

## **VERIFICATION**

The undersigned herby depose and say that:

1. I am the plaintiff in this action.

2. I hereby verify that the facts and matters contained in the foregoing complaint are, to the best of my personal knowledge and belief, true and accurate.

3. With respect to those matters that are asserted to be "upon information and belief", I further, to the best of my knowledge, believe them to be as so stated.


Subscribed and sworn upon the pains and penalties of perjury this ___7th___ day of August, 2003.

_____
Isaac Williams, Jr.