UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-CV-11470 MAP

| | | |
|---|---|---|
| ISAAC WILLIAMS, JR., | ) | |
|     Plaintiff | ) | DEFENDANTS' MOTION |
| v. | ) | FOR SANCTIONS |
| | ) | BASED ON PLAINTIFF'S |
| MASSACHUSETTS MUTUAL LIFE | ) | SPOLIATION OR |
| INSURANCE COMPANY (a/k/a | ) | DESTRUCTION OF EVIDENCE |
| MASSMUTUAL FINANCIAL GROUP) | ) | (MEMORANDUM |
| and DAVID L. BABSON & COMPANY, INC. | ) | INCORPORATED) |
| (a/k/a DAVID L. BABSON AND COMPANY), | ) | |
|     Defendants | ) | |

**I. Introduction**

Pursuant to Federal Rule of Civil Procedure 37(a) and the inherent power of this Court, the defendants, Massachusetts Mutual Life Insurance Company ("MassMutual") and Babson Capital Management, LLC (formerly David L. Babson & Company, Inc.) ("Babson"), hereby move for sanctions based on loss or destruction of the only documentary evidence supporting the plaintiff's claim that MassMutual had a consistently applied policy of using its performance review process and related procedures for purposes of discriminating against African-American employees. At his deposition, plaintiff testified about a document that, according to him, explicitly supported this allegation, which was set forth in paragraph 43 of his complaint. MassMutual denies that the company has discriminated against African-American employees, through use of its performance review process or otherwise. MassMutual and its subsidiaries are equal employment opportunity employers committed to maintaining a nondiscriminatory workplace where all employees are treated with fairness and respect.

Plaintiff testified that he had the document supporting his allegation of discriminatory practices in "one of his boxes" and that he had last seen it a year ago, which would have been in

October 2003, **after** the August 2003 date on which plaintiff filed his complaint in this case. According to plaintiff's counsel, plaintiff described the contents of the document to plaintiff's counsel in a telephone conversation on or around April 29, 2003, some four months **after** plaintiff filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Despite repeated requests by the defendants that he do so, plaintiff has not produced any such document, and he has told his attorney that he cannot "locate" the document. The only possibilities are that plaintiff destroyed or lost the document after the commencement of this litigation; that he has the document in his possession but has lied about the contents of the document and is therefore refusing to produce it; or (less plausibly) that he is refusing to produce a document that he has in his possession for some other reason he has not disclosed.

Under these circumstances, as sanction for plaintiff's misconduct, which constitutes either spoliation of evidence or a deliberate failure and refusal to produce key evidence supporting serious allegations of discrimination, the defendants request that this Court order stricken paragraph 43 of plaintiff's complaint and order that plaintiff be precluded from testifying to, or otherwise putting on evidence concerning, the allegations in paragraph 43 of the complaint.

**II.    Relevant Background**

Plaintiff was employed by Babson as a Managing Director with the title of Director of Corporate Communications. Plaintiff alleged in his complaint that he was subjected to a hostile environment and constructively discharged based on race. Babson and MassMutual deny that plaintiff was subjected to a hostile environment or that he was constructively discharged based on race. It is undisputed that plaintiff left the workplace on medical leave during an

investigation of a complaint of inappropriate conduct made against him by an African American student whom he met at the University of Virginia during a recruiting trip for MassMutual. Plaintiff never returned to work at Babson.

Plaintiff filed an administrative Charge of Discrimination with the EEOC on or around December 10, 2002. On May 7, 2003, the EEOC dismissed the action because the evidence submitted failed to indicate that a violation of the law had occurred and that it was unlikely that the EEOC would find a violation of law if it invested additional resources. (A copy of the EEOC Dismissal and Notification of Rights is attached hereto as Exhibit 1.) Following the EEOC's dismissal of plaintiff's Charge of Discrimination, plaintiff filed his complaint in this action on or around August 7, 2003. In his complaint, he alleged, among other things, that "[t]he defendants have established and allowed to exist an unwritten, yet real, policy of content – based discrimination and selective treatment of African American employees through the pretextural use of their employment reviews and procedures. While not reduced to written form nor officially promulgated in any perceptible manner, these policies are universally understood and consistently utilized by senior management and have been allowed to become an accepted type of conduct and practice as applied to African-American employees." Complaint, ¶ 43.

On May 3, 2004, plaintiff served Plaintiff, Isaac Williams, Initial Disclosures Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and Local Rule 26.2 ("Plaintiff's Initial Disclosures"). (A copy of Plaintiff's Initial Disclosures is attached hereto as Exhibit 2.) In Plaintiff's Initial Disclosures, plaintiff's counsel represented that "Williams has made a diligent search for documents relevant to this action." Exhibit 2, p. 4. The defendants served Defendant's First Request for Production of Documents and Things to Plaintiff ("Defendant's Document Requests") on April 22, 2004. At plaintiff's request, the defendants extended to June 25, 2004

the time for plaintiff to respond to the Defendant's Document Requests.  During the conversation about plaintiff's request for an extension, plaintiff's counsel assured defendants' counsel that the defendants would receive in discovery whatever their client had in his possession.  *See* Affidavit in Support of Motion for Sanction, ¶ 2.  (The Affidavit in Support of Motion for Sanctions is attached hereto as Exhibit 3.)  Plaintiff served his response to the Defendant's Document Requests on June 25, 2004.

The defendants took plaintiff's deposition on October 28, 2004.  He was asked during his deposition about any factual support he claimed existed for the allegation in paragraph 43 of his complaint, set forth above.  Plaintiff testified as follows:[1]

> Q:  (By Ms. Robertson):  Is there any other basis other than what you just testified to about the allegation that you made in paragraph forty-three of your complaint?
>
> MR. REILLY [plaintiff's counsel]:  A portion of paragraph forty-three?
>
> MS. ROBERTSON:  Correct.
>
> THE WITNESS:  Yes.  There is an e-mail that exists that was sent from Nancy Roberts to Bob O'Connell.  In that e-mail, Nancy talks to Bob about ways to document incidents surrounding minorities, almost to create a paper trail.  It was centered around ways -- there's an e-mail that exists.  I'm just trying to refresh my memory.  The e-mail was either from Nancy Roberts or Stephanie Alsup.  That's where her name came up at.  It referenced to Bob O'Connell ways to begin disciplinary actions, terminations actions, focussed on minorities.
>
> Q:  Have you seen a copy of this e-mail?
>
> A.  I sure have.
>
> Q.  Do you have a copy of this e-mail?
>
> A.  I'm looking.
>
> Q.  Did you have a copy of this e-mail?

---

[1] As the only other evidence offered in support of this allegation, plaintiff identified certain African American individuals formerly employed by MassMutual, some of whom resigned and some of whom were involuntarily terminated, who, according to plaintiff, believed that they had been discriminated against during their MassMutual employment.  None of these individuals ever filed a complaint of racial discrimination against MassMutual or any of its subsidiaries.

4

A. Yes; I did.

Q. When is the last time you say you saw this e-mail?

A. About a year.

Q. What did you do with it?

A. It's in one of my boxes.

Q. Did you turn over a copy to counsel?

A. No. I told him about it. I haven't found it yet.

MR. REILLY: For the record, we didn't get into the document production responses that we requested and that will be in my letter to you. I have the dates and sufficient details to enable anyone to identify this document. If there are, there will be a request to that.

Q. (BY MS. ROBERTSON) When is the last time that you say you saw a copy of this e-mail?

A. About a year ago.

Q. Where did you get a copy of this e-mail?

MR. REILLY: If you know.

THE WITNESS: From my wife.

Q. (BY MS. ROBERTSON) Does she still have a copy of this e-mail in her possession?

A. No; she gave it to me.

Q. What was her purpose in giving it to you, to your understanding?

A. She wanted me to read it. She was very disturbed by it.

Q. Did she take any steps as a result of seeing this e-mail?

MR. REILLY: Object to the form of that question.

Q. (BY MS. ROBERTSON) If you know?

A. I'm not aware that she did.

Q. How is it that your wife, Valerie Williams, saw a copy of this e-mail?

5

>   A. She worked in Human Resources.
>
>   Q. Was she copied on that?
>
>   A. I think she was maybe cc'ed or got a blind copy. I'm not sure.
>
>   Q. Do you recall whether she was identified as a recipient on the e-mail on the "to"?
>
>   MR. REILLY: Again, we're requesting that it be produced and it should be produced as part of our document request.
>
>   MS. ROBERTSON: I don't have your request in front of me.
>
>   Q. (BY MS. ROBERTSON) What is your basis for saying that policies of content-based discrimination, selective treatment of African-American employees through pretextural use of employment reviews and procedures are universally understood and consistently utilized by senior management?
>
>   A. I think that goes back to what I said earlier -- that MassMutual, David L. Babson will, have been in the past, attempted to always terminate blacks by performance; and it's really spelled out more in that letter that I'm referring to. That's my answer.

See Exhibit 4. (The relevant portion of plaintiff's deposition is attached hereto as Exhibit 4.)

On October 9, 2004, following plaintiff's deposition, plaintiff's counsel wrote to defendants' counsel indicating that plaintiff was "attempting to retrieve his copy" of the e-mail communication that he had described during his deposition, and further "noted that this item has not been furnished in response to [plaintiff's] document production requests in this case." Plaintiff's counsel proceeded to describe with some specificity the contents of this document, which plaintiff had admitted that he had in his possession, including the date of the document and its author and recipients, along with references to a number of terms or phrases that supposedly appeared in the document. (A copy of the October 29, 2004 letter from plaintiff's counsel is attached hereto as Exhibit 5.)

On November 10, 2004, defendants' counsel wrote to plaintiff's counsel noting that plaintiff had not identified in his initial discovery disclosures the e-mail about which he had testified during his deposition, nor had he produced a copy of the document despite the fact that

6

he had it in his possession and that it was a document that supposedly "spelled out" a policy of intentional discrimination by MassMutual. Defendants' counsel further noted that the specificity with which the document was described in plaintiff's counsel's October 29th letter strongly suggested that the plaintiff had the document readily at hand. Defendants' counsel indicated that once plaintiff produced the document in question, the defendants would promptly ascertain whether MassMutual had a copy of the document in its possession and, if so, would produce a copy to plaintiff. (A copy of the November 10th letter from defendants' counsel is attached hereto as Exhibit 6.) On November 22, 2004, plaintiff's counsel stated in correspondence that plaintiff had not located the document in question and was running out of places to look for it. (A copy of the November 22nd letter from plaintiff's counsel is attached hereto as Exhibit 7). As of the date of filing of this motion, plaintiff still has not produced the e-mail that he described during his October 28, 2004 deposition.

### III.   Argument

**1. Plaintiff has Either Destroyed or Refused to Produce What Would Be Key Evidence Supporting his Allegations of Discrimination**

In plaintiff's complaint and during his deposition, plaintiff made the serious allegation that MassMutual had a consistently applied policy of discriminating against African-American employees through the pretextual use of performance reviews and related procedures. Plaintiff testified, under oath, that he had compelling evidence of this policy in the form of an e-mail, written by an officer of MassMutual employed in the Corporate Human Resources Division, and directed to the company's Chief Executive Officer, supposedly describing the policy. MassMutual denies that it had any such discriminatory policy or practice. *See* Answer, ¶¶ 42-43. So far as the defendants are aware, based on a good faith search made following plaintiff's deposition, there is no memorandum or e-mail setting forth or referring to any such policy.

7

Called upon to produce the document, plaintiff has replied, through counsel, that he cannot "locate" this key piece of evidence.

Plaintiff's conduct in regard to the document in question constitutes either spoliation of, or a deliberate refusal to produce, the only documentary evidence alleged to exist that would support plaintiff's allegation in paragraph 43 of his complaint of a pattern and practice of discrimination by the defendants in this action. *See* Exhibit 4, attached hereto. Once plaintiff initiated proceedings before the EEOC, he had a duty to preserve all evidence relevant to his claims against the defendants in this action and to be ready to turn such evidence over once litigation commenced in this Court. *See, e.g.,* Fed. R. Civ. P. 26(a)(B) (party must provide copy of or description by category and location of all documents that disclosing party may use to support his claims in case); *see also McGuire v. Acufex Microsurgical, Inc.,* 175 F.R.D. 149, 152-153 (D. Mass. 1997) (parties in discrimination action who are obliged to proceed before administrative agency before suit is filed incur obligation to preserve relevant evidence in their possession while case is pending before administrative agency; court has inherent authority to sanction party for spoliation of evidence that occurs while claim is pending before administrative agency).

Sanctions should be imposed against a litigant "'who is on notice that documents and information in [his] possession are relevant to litigation or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information.'" *McGuire,* 175 F.R.D. at 153, *quoting ABC Health Servs. v. International Business Machs.Corp.,* 158 F.R.D. 180, 182 (S.D. Ga. 1994), *quoting William T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1445 (C.D. Cal. 1984). Sanctions also are appropriate pursuant to Federal Rule of Civil Procedure 37 (a)(2)(A) when a party fails to make a

disclosure required by Federal Rule of Civil Procedure 26(a).  In this case, plaintiff had the document in question in his possession at least until April 2003, when he described the document to his attorney during a telephone conversation.  *See* Exhibits 5 and 7, attached hereto.  Plaintiff had initiated proceedings before the EEOC in December 2002.  Indisputably, plaintiff had an obligation to preserve and produce key evidence supporting the serious allegation he made in paragraph 43 of his complaint and he had an obligation to identify the document under Federal Rule of Civil Procedure 26(a).  Plaintiff has either: (1) destroyed or failed to preserve this evidence; or (2) failed and refused to produce it because he has lied about the contents of the document in question or has some other undisclosed reason for refusing to produce it.  Plaintiff has engaged in sanctionable misconduct in this case.

> **2. As Sanction for Plaintiff's Misconduct, this Court Should Order that Paragraph 34 of Plaintiff's Complaint be Stricken and That No Evidence be Admitted Related to the Allegations Contained Therein**

Sanctions are warranted when the adversary of a party who has engaged in misconduct in connection with relevant evidence is prejudiced by the destruction or refusal to produce evidence and there is a potential for abuse if the evidence is not excluded or the party who engaged in misconduct is not otherwise sanctioned.  *See, e.g., Headley v. Chrysler Motor Corp.,* 141 F.R.D. 362, 365 & n.13 (D. Mass. 1991); *see also McGuire,* 175 F.R.D. at 156 (listing factors to be considered by courts in deciding whether to exclude evidence or impose other sanctions); *Lewis v. Darce Towing Co.,* 94 F.R.D. 262, 266-267 (W.D. La. 1982).  "Under [this Court's] inherent powers, [this Court] could dismiss the case, exclude evidence, or impose other sanctions as warranted by the conduct in question."  *McGuire,* 175 F.R.D. at 153; *see also Pan American Grain Mfg. Co. v. Puerto Rico Ports Auth.,* 193 F.R.D. 26, 31 (D.P.R. 2000) (court has inherent powers "that enable it to enforce standards of conduct during discovery").

In his complaint, plaintiff made the serious allegation that the defendants had a consistently applied policy and practice, understood by senior management and routinely applied, of using performance evaluations and related procedures to target African American employees for disciplinary action and termination. Plaintiff has further alleged that a senior member of MassMutual's Corporate Human Resources Division sent an e-mail to the company's Chief Executive Officer that explained this policy. The defendants will be prejudiced if plaintiff is permitted to testify to the existence of such a policy based on the alleged content of an e-mail that plaintiff has destroyed or refused to produce. In these circumstances, a jury will be required to choose between plaintiff's testimony (or, possibly, the testimony of his wife) and the defendants' denial that any such policy existed or any such e-mail was written. The defendants should not be put to the proof on this issue. *See Headley,* 141 F.R.D. at 366 (plaintiff's destruction of evidence created situation in which, barring sanction of exclusion of evidence, both parties would be left to their proof on an issue that might not exist but for plaintiff's destruction of evidence). In fact, the "best evidence" rule should preclude plaintiff from offering any testimony about a policy allegedly reflected in a document that was in his possession after the inception of this litigation, when he has provided no satisfactory account of the reason why the document is now unavailable. *See, e.g., Harrington v. United States,* 504 F.2d 1306, 1313 (1st Cir. 1974) (secondary evidence, such as testimony about the supposed contents of a missing document, is admissible only if the original is unavailable for some reason other than the serious fault of the proponent); *Sylvania Elec. Prods., Inc. v. Flanagan,* 352 F.2d 1005, 1007-1008 (1st Cir. 1965) (same).

An order striking paragraph 43 of plaintiff's complaint and precluding evidence supporting the allegations contained therein would be an appropriate sanction in the

circumstances of this case. Plaintiff's unsupported claim about the existence of such a policy should not be permitted when plaintiff is responsible for the loss or destruction of the only documentary evidence allegedly demonstrating the existence of such a policy. Plaintiff has pointed to no other admissible evidence that would support his allegation of a pattern and practice of discrimination against African American employees. The only other evidence plaintiff identified in support of the allegation in paragraph 43 of his complaint was conversations with former MassMutual employees who, according to plaintiff, believed that they had been discriminated against. Testimony from these other individuals, none of whom brought a claim of discrimination against MassMutual, would not be admissible in this case. *See, e.g., Ramos-Melendez v. Valdejully,* 960 F.2d 4 (1st Cir. 1992) (affirming exclusion of evidence about other pending discrimination suits against the defendant because, for such testimony to be significant, it would be necessary to conduct mini-trials on the validity of other complaints); *see also Swanson v. General Serv. Admin.,* 110 F.3d 1180, 1190 (5th Cir.), *cert. denied,* 522 U.S. 948 (1997) (trial court properly excluded evidence about other employees' "belief" that they had been discriminated against, in the absence formal findings of discrimination).

Based on plaintiff's demonstrable misconduct in this case, and the potential for prejudice to the defendants if appropriate sanctions are not imposed, the defendants are entitled to have paragraph 43 of plaintiff's complaint stricken and any other evidence supposedly related to the allegations contained therein precluded.

## IV.    Conclusion

For the foregoing reasons, the defendants respectfully request that this Court order that paragraph 43 of plaintiff's complaint be stricken and that plaintiff be precluded from testifying to, or otherwise offering evidence, in support of the allegations of paragraph 43 of his complaint.

>  The Defendants,
>  MASSACHUSETTS MUTUAL LIFE
>  INSURANCE COMPANY (a/k/a MASSMUTUAL
>  FINANCIAL GROUP) and DAVID L. BABSON &
>  COMPANY, INC. (a/k/a DAVID L. BABSON
>  AND COMPANY),
>  By Their Attorneys:

Dated: November 30, 2004

>  /s/ Katherine A. Robertson
>  Francis D. Dibble, Jr., BBO No. 123220
>  Katherine A. Robertson, BBO No. 557609
>  Bulkley, Richardson and Gelinas, LLP
>  1500 Main Street, Suite 2700
>  Springfield, MA  01115
>  Tel.: (413) 781-2820
>  Fax:  (413) 272-6804

Certificate of Compliance with Local Rule 37.1

I, Katherine A. Robertson, counsel for the defendants in the above-captioned matter, hereby certify that I have conferred with counsel for plaintiff by telephone and in correspondence on various occasions in a good faith effort to narrow the areas of disagreement concerning the issues raised in the within motion.

>  /s/ Katherine A. Robertson
>  Katherine A. Robertson