# EXHIBIT 5

# IN THE MATTER OF:

ISAAC WILLIAMS, JR. vs. MASSMUTUAL ET AL

# DEPOSITION OF:

ISAAC WILLIAMS, JR.
DATE: OCTOBER 28, 2004

**PERLIK and COYLE REPORTING**
*Certified Professional Reporters*

*1331 Main Street*
*Springfield, MA 01103*
*Tel.(413) 731-7931   Fax(413) 731-7451*

**COMPRESSED TRANSCRIPT & WORD INDEX**

Case 3:03-cv-11470-MAP   Document 26-4   Filed 12/08/2004   Page 3 of 5

ISAAC WILLIAMS, JR. vs. MASSMUTUAL ET AL
ISAAC WILLIAMS, JR.                    OCTOBER 28, 2004

**Page 89**

1  differently; and I was later told that I had more
2  opportunity as a minority in IM than I would in
3  the rest of the company.
4      Q.  Who do you say told you -- who do you
5  say told you there was more opportunity for you in
6  Investment Management than there would be in the
7  rest of MassMutual?
8      A.  With a woman by the name of Tony Jones.
9  She was head of Diversity.
10     Q.  Was Ms. Jones a MassMutual employee?
11     A.  Yes; she was.
12     Q.  When do you say you had that
13  conversation with Tony Jones?
14     A.  I can't recall the date.
15     Q.  1999?
16     A.  '99, 2000. I just can't recall.
17     Q.  While you reported to Mr. Hayes, did you
18  ever talk to Mr. Foley about your duties and
19  responsibilities or your -- why you were working
20  with Mr. Hayes?
21     A.  We would talk, sure.
22     Q.  What do you recall saying to Mr. Foley
23  about your reporting relationship to Mr. Hayes?
24     A.  That I enjoyed what I was doing.

**Page 90**

1      Q.  Can you identify that document,
2  Mr. Williams? (Indicating.)
3      A.  (Witness examining document.) The
4  document is entitled Charge of Discrimination and
5  I see it says here EEOC was the agency.
6      Q.  Is that your signature on page one of
7  this document?
8      A.  Yes; it is.
9      Q.  Is that your signature on page two of
10  the document?
11     A.  Yes.
12             MS. ROBERTSON: Could you mark that
13  as Exhibit 6?
14             (Defendant's Deposition Exhibit
                No. 6 offered and marked.)
15
16     Q.  (BY MS. ROBERTSON) With respect to the
17  document that we now have marked as Exhibit 6, is
18  that the charge that you filed or caused to be
19  filed at the EEOC against Babson and MassMutual?
20     A.  (Witness examining document.) Yes; to
21  the best of my knowledge, yes.
22     Q.  Is that a document that you signed under
23  the penalties of perjury?
24     A.  Yes.

**Page 91**

1      Q.  Who prepared the particulars, page two
2  of Exhibit 6?
3      A.  I did, with assistance from my counsel.
4      Q.  Tell me each and every occasion on which
5  you say Mr. Bickford called you "boy"? Could you
6  do that?
7      A.  There were several occasions, counselor.
8      Q.  Could you please describe each occasion
9  on which you say that Mr. Bickford called you
10  "boy"?
11     A.  Each occasion?
12     Q.  Yes.
13     A.  I don't know how to answer that because
14  there was several occasions.
15     Q.  How many is several?
16     A.  A lot.
17     Q.  How many?
18     A.  Twenty-five, fifty times.
19     Q.  When is the first time you say that this
20  occurred?
21     A.  Right after I started working for him
22  and he said, "that's a good boy." It really
23  shocked me.
24         I finished a project or something and he

**Page 92**

1  said "that's a good boy." It just...
2      Q.  When do you say this occurred?
3      A.  After I completed one of my first
4  projects with Mr. Bickford.
5      Q.  I'm asking for the date, Mr. Williams.
6      A.  Counselor, I can't give you the exact
7  date.
8             MR. REILLY: Just answer to the best
9  of your recollection.
10            THE WITNESS: Sometime in 2000.
11     Q.  (BY MS. ROBERTSON) Where were you when
12  you say this remark was made to you?
13     A.  In Cambridge.
14     Q.  What project do you say you had
15  completed?
16     A.  I can't remember the exact project.
17     Q.  You don't have any idea what project it
18  is that you completed?
19     A.  I can't remember the exact project, I'm
20  sorry. It was a project.
21     Q.  What general project was it? In
22  general, what project?
23     A.  I can't remember.
24     Q.  You have no recollection of the project

Case 3:03-cv-11470-MAP   Document 26-4   Filed 12/08/2004   Page 4 of 5

**ISAAC WILLIAMS, JR. vs. MASSMUTUAL ET AL**
**ISAAC WILLIAMS, JR.**                    **OCTOBER 28, 2004**

Page 93

```
11:54:26  1   that you say you completed that you say you were
11:54:30  2   complimented or there was a remark made to you as
11:54:33  3   a result?
11:54:34  4       A.  I don't remember the project.
11:54:35  5       Q.  You have no idea?
11:54:36  6       A.  No.
11:54:36  7           MR. REILLY:  Object as to the form.
11:54:38  8   Asked and answered twice now.
11:54:41  9       Q.  (BY MS. ROBERTSON)  Did you say anything
11:54:42 10   to Mr. Bickford about what you apparently said was
11:54:47 11   an offensive remark?
11:54:51 12       A.  I was too shocked to say anything.
11:54:51 13       Q.  Is the answer no?
11:54:51 14       A.  The answer is no.
11:54:51 15       Q.  You were in Cambridge, is that correct?
11:54:53 16       A.  That's correct.
11:54:54 17       Q.  Where were you in Cambridge?
11:54:56 18       A.  In his office.
11:54:57 19       Q.  Was anybody else present?
11:55:00 20       A.  No.
11:55:00 21       Q.  What was the occasion of your being in
11:55:04 22   Mr. Bickford's office?
11:55:06 23       A.  I was required to go to Cambridge during
11:55:10 24   the course of the month to check in with Ed.
```

Page 94

```
11:55:16  1       Q.  How often were you required to go to
11:55:21  2   Cambridge to check in with Mr. Bickford?
11:55:24  3       A.  At least once a month.
11:55:25  4       Q.  Was this the first occasion on which you
11:55:28  5   went into Cambridge to check in with Mr. Bickford?
11:55:32  6       A.  No.
11:55:32  7       Q.  Was it the second occasion on which you
11:55:35  8   went into Cambridge to check in with Mr. Bickford?
11:55:38  9       A.  I don't believe so.
11:55:39 10       Q.  Was it the third occasion on which you
11:55:41 11   went into Cambridge --
11:55:43 12       A.  (Interposing) I can't recall.
11:55:44 13       Q.  When is the next occasion on which you
11:55:46 14   say Mr. Bickford referred to you as "boy"?
11:55:48 15       A.  It was a part of his conversation so
11:55:55 16   everything was "that's a good boy."
11:55:56 17           If it was on a telephone call and
11:56:00 18   something was done, "that's a good boy."  It could
11:56:05 19   be in the course of a conversation, "that's a good
11:56:08 20   boy."
11:56:13 21       Q.  Is it your testimony that every time he
11:56:15 22   used the word "boy," he used it in the context of
11:56:20 23   "that's a good boy"?
11:56:21 24       A.  That was a lot of it, "that's a good
```

Page 95

```
11:56:23  1   boy"; yes.
11:56:24  2       Q.  Was there ever any other context in
11:56:27  3   which he used the term "boy"?
11:56:32  4       A.  Not to my recollection.
11:56:34  5       Q.  Do you ever recall him saying -- do you
11:56:47  6   say he ever said this in front of anyone else,
11:56:50  7   Mr. Williams?
11:56:50  8           Is there any occasion that you recall
11:56:52  9   Mr. Bickford saying "that's a good boy" to you in
11:56:55 10   front of anybody else?
11:56:56 11       A.  Not that I can recall.
11:56:59 12       Q.  When is the most recent occasion on
11:57:04 13   which you say Mr. Bickford said "that's a good
11:57:06 14   boy" to you?
11:57:09 15       A.  Most recent?
11:57:10 16       Q.  Most recent?
11:57:11 17       A.  It would have been before I left
11:57:12 18   MassMutual.
11:57:12 19       Q.  Before you left Babson?
11:57:14 20       A.  Babson, MassMutual.
11:57:15 21       Q.  How long before you left Babson?
11:57:17 22       A.  I don't recall.
11:57:18 23       Q.  You don't have any idea?
11:57:19 24       A.  I don't.
```

Page 96

```
11:57:19  1       Q.  Did it happen to 2002?
11:57:21  2       A.  It could have.
11:57:22  3       Q.  But you don't recall?
11:57:23  4       A.  No.
11:57:23  5       Q.  Did you ever make any note with respect
11:57:37  6   to the phrase that you say that Mr. Bickford used,
11:57:40  7   calling you, saying "that's a good boy" to you?
11:57:46  8   Did you ever make any notes on the occasion that
11:57:49  9   you said it occurred?
11:57:50 10           MR. REILLY:  Objection.
11:57:50 11           MS. ROBERTSON:  Can you tell me the
11:57:52 12   basis of the objection?
11:57:53 13           MR. REILLY:  To form.  There are
11:57:55 14   many things that can be a written note.  Did he
11:57:58 15   take notice of it?
11:57:59 16           MS. ROBERTSON:  I'll clarify.
11:58:00 17       Q.  (BY MS. ROBERTSON)  Did you ever make
11:58:02 18   any written record, whether it be in electronic
11:58:05 19   format or in handwriting on any occasion that
11:58:10 20   Mr. Bickford said something to you along the lines
11:58:12 21   of "that's a good boy"?
11:58:14 22       A.  Yes.
11:58:14 23       Q.  What record did you make of that?
11:58:16 24       A.  A record to Human Resources.
```

Case 3:03-cv-11470-MAP   Document 26-4   Filed 12/08/2004   Page 5 of 5

ISAAC WILLIAMS, JR. vs. MASSMUTUAL ET AL
ISAAC WILLIAMS, JR.                    OCTOBER 28, 2004

**97**

1  Q. When do you say you put this in writing
2  to Human Resources?
3  A. I can't recall the exact date.
4  Q. In what form do you say you made some
5  kind of a report or record to Human Resources?
6  A. It would either have been written or
7  e-mail fashion to Sue Moore.
8  Q. You say you either wrote or sent an
9  e-mail to Ms. Moore?
10  A. That's correct.
11  Q. Is that a document that you have in your
12  possession or control?
13  A. Possibly.
14  Q. Did you keep a copy of the document?
15  A. Possibly -- it could be in there.
16  Q. Is this a record that you say you made
17  in your own handwriting?
18  A. I said either e-mail or I wrote it.
19  Q. So your testimony is you either wrote to
20  Ms. Moore or sent an e-mail to Ms. Moore in which
21  you said Mr. Bickford had said "that's a good boy"
22  to you, is that correct?
23  A. That's correct.
24  Q. Did you specify on which occasion that

**98**

1  occurred?
2  A. No. No; I didn't.
3  Q. Did you ever make a contemporaneous
4  electronic or handwritten note on any occasion on
5  which you say Mr. Bickford said "that's a good
6  boy" to you?
7  A. No.
8      MS. ROBERTSON: I'm going to take a
9  break here and say I don't believe I have any
10  document that's either an e-mail or a note from
11  Mr. Williams to Ms. Moore on making that kind of a
12  complaint or assertion, Mr. Reilly.
13      MR. REILLY: I think it was there.
14  We did receive your proffer.
15      MS. ROBERTSON: Well, let me check.
16  I don't believe there's a document to that effect.
17  Q. (BY MS. ROBERTSON) Can you recall any
18  specific occasion out of what you say were
19  twenty-five to fifty occasions on which
20  Mr. Bickford used this phrase "that's a good boy"
21  to you?
22  A. Counselor, as I answered before, that
23  was a part of his conversation with me. That's
24  just the way Ed spoke to me. I cannot think of an

**99**

1  instance. I can just think of numerous times in
2  conversations of this condescending attitude of
3  "that's a boy."
4      Can I think of a time or an incident, I
5  told you after a project, but he could say "that's
6  a good boy" --
7  Q. (Interposing) You can't think of any
8  specific occasion, any specific event?
9  A. I said no, counselor.
10  Q. You said that.
11  A. I said that.
12  Q. And you can't think of any occasion on
13  which someone overheard the comment?
14  A. Somebody could have heard that on the
15  other side. I don't know that.
16  Q. Are you aware of anybody that you say
17  overheard --
18  A. (Interposing) No.
19  Q. The end of my question: Are you aware
20  of anyone that overheard the language of
21  Mr. Bickford that was "that's a good boy" to you?
22  A. Overheard? No; I'm not aware.
23  Q. Did you ever hear that Mr. -- did you
24  ever hear Mr. Bickford use that term, "that's a

**100**

1  good boy," to anybody else?
2  A. Never.
3  Q. As far as you know, that's something he
4  could have done, is that correct?
5      MR. REILLY: Object to the form.
6      THE WITNESS: The question?
7  Q. (BY MS. ROBERTSON) As far as you know,
8  is that something he could have done?
9      MR. REILLY: Object to the form.
10     THE WITNESS: I don't know.
11  Q. (BY MS. ROBERTSON) Is there any
12  document that would help you recall with
13  specificity any occasion that Mr. Bickford said
14  "that's a good boy" to you?
15  A. Any document? No.
16  Q. Is there any other way in which your
17  memory about the statement that you say
18  Mr. Bickford made to you -- is there any other way
19  in which your recollection might be refreshed?
20     MR. REILLY: Object to the form.
21  You may answer.
22     THE WITNESS: This was relayed
23  verbally to Mr. Foley. This was relayed verbally
24  to Mr. Hayes. This was relayed verbally to