UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-CV-11470 MAP

| | |
|---|---|
| ISAAC WILLIAMS, JR., )<br>        Plaintiff )<br>v. )<br>)<br>MASSACHUSETTS MUTUAL LIFE )<br>INSURANCE COMPANY (a/k/a )<br>MASSMUTUAL FINANCIAL GROUP) )<br>and DAVID L. BABSON & COMPANY, INC. )<br>(a/k/a DAVID L. BABSON AND COMPANY), )<br>        Defendants | MEMORANDUM IN SUPPORT<br>OF MOTION TO QUASH OR<br>FOR PROTECTIVE ORDER<br>REGARDING DEPOSITION<br>NOTICE TO ROBERT K.<br>RANCKE |

**I.     Introduction**

Pursuant to Federal Rules of Civil Procedure and 26 (c) and 45(c)(3)(A)(iii), the defendants, Massachusetts Mutual Life Insurance Company ("MassMutual") and Babson Capital Management LLC (formerly David L. Babson & Company, Inc.) ("Babson"), (collectively the Defendants) have moved to quash the deposition notice duces tecum served on Robert K. Rancke, an attorney employed by MassMutual, or for a protective order providing that Mr. Rancke's deposition not be taken.  The Defendants further request that they be awarded their attorney's fees incurred in making this motion.  A copy of the deposition notice duces tecum ("Deposition Notice") served upon Mr. Rancke is attached hereto as Exhibit 1.[1]

Depositions of counsel for an opposing party are disfavored and are permitted only in limited circumstances, none of which are present in this case.  The burden is on the party seeking to take such a deposition to demonstrate the propriety of, and need for, the deposition of opposing counsel.  Plaintiff cannot do so in this case.  Plaintiff's apparent basis for noticing the deposition of Mr. Rancke is an unfounded allegation that the Defendants, through an unidentified

---

[1] The Defendants have served separate written objections to the document production requests in Exhibit "A" to the Deposition Notice on plaintiff's counsel.

in-house attorney, have in the past "purged" employee files before the files were provided to employees and allegedly removed documents from this plaintiff's personnel file or failed to produce documents in discovery related to plaintiff's employment with the Defendants. Plaintiff has failed to identify any document or any category of documents that he claims was not provided with his personnel records or produced in this litigation, nor has he produced any credible evidence that the Defendants have withheld relevant information in this litigation. *See Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005).

On the basis of the implausible contention that something was "purged" from his personnel file, plaintiff proposes to depose an attorney whose primary responsibility is to provide legal advice to employees and departments of MassMutual by means of communications protected by the attorney-client privilege. The Defendants' motion to quash or for a protective order should be allowed because plaintiff cannot show that: (1) there is no other means available by which he may obtain information concerning documents related to his employment; (2) information sought by the deposition of Mr. Rancke is relevant and not protected by the attorney-client privilege or the work product rule; or (3) information sought from Mr. Rancke is crucial to the preparation of plaintiff's case.

The Deposition Notice represents a further example of plaintiff's failure to focus his discovery efforts on obtaining information relevant to his claims in this case. Plaintiff has not attempted to obtain information about his personnel records from sources other than Mr. Rancke or by less disruptive means than deposing an attorney for an opposing party. Plaintiff's conduct in discovery has placed unnecessary demands on judicial resources and increased the Defendants' costs in this action, including requiring the Defendants to waste time and resources on a prior "misguided" endeavor regarding discovery that came close to warranting the

imposition of expenses and attorney's fees on plaintiff. *See Williams*, 226 F.R.D. at 147. Particularly in view of plaintiff's unfounded accusations of misconduct by the Defendants, plaintiff's decision to notice the deposition of counsel for an opposing party, without any reasonable expectation of obtaining information relevant to his claims in the case, is inherently abusive. Such tactics warrant an order that plaintiff be required to compensate the Defendants for their expenses incurred in filing this motion.

## II.     Relevant Background

On or around November 30, 2004, the Defendants filed Defendants' Motion for Sanctions Based on Plaintiff's Spoliation or Destruction of Evidence ("Defendants' Motion for Sanctions") based on plaintiff's deposition testimony about a document he alleged "spelled out" a practice and policy of MassMutual using its performance review and progressive discipline policies for purposes of discriminating against African-American employees. Because plaintiff claimed to have had the document in his possession but had failed and refused to produce it, Defendants' Motion for Sanctions (which was subsequently allowed) asked the Court to preclude plaintiff from relying on the contents of this supposed "smoking gun." In response to Defendants' Motion for Sanctions, plaintiff mounted an attack on the Defendants' conduct, without any legitimate basis for doing so, claiming that the Defendants had been less than candid in their production of documents in this case and had, in fact, altered a document before producing it in discovery. Plaintiff alleged, in his opposition to Defendants' Motion for Sanctions, that "the facts strongly point[ed] to an in-house cover up [by Defendants] of [the supposed "smoking gun" document] and other potentially harmful information . . . include[ing] the subsequent production of a similar memorandum, changed and marked 'Confidential.'" Plaintiff's Opposition to Defendants' Motion for Sanctions Based on Alleged "Spoliation or

3

Destruction of Evidence" at 3. In support of plaintiff's opposition to Defendants' Motion for Sanctions, Valerie Williams, plaintiff's wife, attested that she was "not surprised" the Defendants said they could not find the supposed "smoking gun" document because, according to her, an unnamed in-house attorney had "on numerous occasions," told her to "get rid" of "risky items" from personnel files. As the Court noted in the *Williams* case, Ms. Williams failed to identify the in-house counsel to whom she was referring, any employee from whose file she claimed to have removed documents or any document she supposedly got "rid of." *See Wiliams*, 226 F.R.D. at 146 n.3.

In Plaintiff's Further Opposition to Motion for Sanctions and Corresponding Motion to Compel Discovery and Appoint a Neutral Expert in Computer Forensics ("Plaintiff's Motion for Computer Expert"), filed on December 28, 2004, plaintiff pursued his baseless theme of misconduct by the Defendants, requesting that a neutral computer expert be appointed by the Court and a forensic examination of MassMutual's computer system be conducted "(at first) limited to the attempted recovery of the October 2002 e-mail described by Williams and his counsel's aforementioned memorandum [the supposed "smoking gun" document]. . . . Should the e-mail in question be recovered, plaintiff further requests that an additional, more detailed electronic investigation be undertaken to locate and retrieve all electronic communications related to [plaintiff's] employment and termination that have not yet been produced by defendants." Plaintiff's Motion for Computer Expert at 3 (emphasis supplied).

In response to plaintiff's allegations, the Defendants conducted a forensic computer search for the supposed October 2002 "smoking gun" e-mail. The "e-mail in question" was not recovered because it never existed. The Court denied plaintiff's motion for a forensic examination of MassMutual's computers which, the Court stated was based only on

4

uncorroborated evidence and on an alleged document that plaintiff claimed to have had in his possession but could no longer locate.  *See Williams*, 226 F.R.D. at 145.  In response to MassMutual's request that plaintiff be required personally to compensate the Defendants for the time and expense of responding to his implausible allegations about a non-existent e-mail, the Court stated that "although the question is close, the Court DENIES Defendants' request for expenses and attorney's fees.  The court trusts that this particular endeavor regarding discovery on Plaintiff's part, misguided as it may have been, will be short-lived." *Williams*, 226 F.R.D. at 147.

Despite this Court's admonition to plaintiff to avoid "misguided" discovery endeavors, the fact that the "e-mail in question" never existed, and that plaintiff's predicate for further discovery concerning documents allegedly removed from his personnel file or not produced in discovery was **not** met, plaintiff has noticed the deposition of opposing counsel.  The Deposition Notice purports to require Mr. Rancke to produce  "[a]ny original or duplicate personnel file of Isaac Williams, Jr. that has been reviewed [by Mr. Rancke];" "[o]riginals and copies of any documents kept in the ordinary course of business that have at any time been 'purged' or removed from the personnel file of Isaac Williams, Jr. by the deponent or anyone acting at his direction;" and "[a]ny other documents . . . concerning Isaac Williams, Jr., and/or Valerie Williams that have been reviewed by and/or is in the possession, custody and control (including constructive control) of the deponent."  *See* Exhibit "A" to Exhibit 1 hereto.

Based on the documents requested in Exhibit "A," it appears that plaintiff has noticed Mr. Rancke's deposition to further pursue his discredited claims that the Defendants have altered or failed to produce documents in the course of this litigation.  *See Williams*, 226 F.R.D. at 146.

5

### III. Legal Argument

Federal courts do not look with favor upon attempts to depose opposing counsel. *See, e.g., Dunkin' Donuts, Inc. v. Mandorico, Inc.* 181 F.R.D. 208, 209 (D.P.R. 1998) (citing cases). In the *Mandorico* case, the defendant sought to take the deposition of counsel for Dunkin Donuts who had signed a letter to the defendant franchisee terminating the defendant's franchise. The defendant stated that it had noticed counsel's deposition to determine what Dunkin Donuts knew or did not know at the time Dunkin Donuts issued the notice to terminate the defendant's franchise. *Mandorico,* 181 F.R.D. at 211. The court in the *Mandorico* case stated that "the party seeking to depose an opposing counsel, has to 'establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome. . . . 'The burden is on the party seeking the discovery to demonstrate its propriety and need.'" *Mandorico,* 181 F.R.D. at 210, *quoting N.F.A. Corp. v. Riverview Narrow Fabrics,* 117 F.R.D. 83, 85 (M.D. N.C. 1987); *American Casualty Co. of Reading, Penn. v. Krieger,* 160 F.R.D. 582, 585 (S.D. Cal. 1995). **"The mere request to depose an opposing counsel constitutes 'good cause' for obtaining a protective order** 'unless the party seeking the deposition can show both the propriety and need for the deposition.'" *Mandorico,* 181 F.R.D. at 210 (emphasis supplied), *quoting Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., ITT,* 125 F.R.D. 578, 594 (N.D.N.Y. 1989).

In determining whether the deposition of opposing counsel will be permitted, federal courts generally have relied on the three-part test set out in the case of *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986).[2] A protective order against the taking of an

---

[2] In the *Shelton* case, plaintiffs noticed the deposition of the defendant's in-house counsel who gathered documents and assisted outside counsel in connection with the litigation initiated by plaintiffs. *Shelton,* 805 F.2d at 1325. The United States Court of Appeals for the Eighth Circuit reversed a discovery sanction imposed by the trial court based

6

opposing counsel's deposition should enter unless the party seeking to take the deposition has shown that "(1) no other means exist to obtain the information than to depose opposing counsel, . . . (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton,* 805 F.2d at 1327. The trial court "at least has *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition listed above are *not* met." *Boughton v. Cotter Corp.,* 65 F.3d 823, 830 (10th Cir. 1995) (emphasis in original). Plaintiff cannot meet his burden on **any** of these factors with respect to a deposition of Mr. Rancke, and the Defendants' motion to quash or for a protective order should be allowed.

    First, plaintiff has not shown that he has no means other than a deposition of Mr. Rancke to obtain information relevant to his claims in this case. As of the date of service of the Deposition Notice, plaintiff had not taken the deposition of human resources personnel for either of the Defendants concerning general practices or policies governing the contents of personnel records, the maintenance of personnel records or steps taken to provide such records to employees who request them. Plaintiff knew that Susan Moore, Managing Director and Director of Human Resources for Babson, was responsible for responding to employee requests for personnel records. Plaintiff wrote to Ms. Moore on June 17, 2002 requesting copies of his personnel files. Ms. Moore sent plaintiff copies of his personnel records on June 27, 2002. (Copies of plaintiff's June 17, 2002 letter to Ms. Moore and Ms. Moore's June 27, 2002 letter to plaintiff are attached hereto as Exhibit 2.) As of the date of service of the Deposition Notice, plaintiff had not even taken Ms. Moore's deposition. On March 8, 2005, i.e., after service of the Deposition Notice for Mr. Rancke's deposition, plaintiff took Ms. Moore's deposition. Plaintiff

---

on in-house counsel's invocation of the work-product doctrine because in-house counsel had "nothing to do with this lawsuit except to represent her client." *Shelton,* 805 F.2d at 1330.

failed to ask Ms. Moore any questions about the process she followed to provide plaintiff with copies of his personnel records.[3]

Plaintiff completely failed to make any reasonable attempt to seek information from sources other than Mr. Rancke before noticing his deposition. For this reason alone, the Defendants' motion to quash or for entry of a protective order prohibiting Mr. Rancke's deposition should be allowed. *See, e.g., Boughton,* 830-831 (trial court properly entered protective order prohibiting the deposition of one of the attorneys for the opposing party when plaintiffs had not shown that the information sought was unavailable from other sources); *Mandorico*, 181 F.R.D. at 211 (entering protective order precluding deposition of attorney who was author of letter terminating franchise because party seeking deposition had not demonstrated that deposition of attorney was only practical means of obtaining the information sought).

Second, plaintiff has not shown that the information he intends to seek in a deposition of Mr. Rancke is relevant and not protected by the attorney-client privilege. The attorney-client privilege protects communications between an attorney and client when the attorney acts in the capacity of an attorney. *See, e.g., Texaco P.R. v. Department of Consumer Affairs*, 60 F.3d 867, 883-884 (1st Cir. 1995). Mr. Rancke's primary responsibility is to provide legal advice to employees in MassMutual's divisions and work units who are his clients. Mr. Rancke's communications with MassMutual employees for purposes of providing legal advice are protected under the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 394 (1981) (communications by corporate employees to in-house counsel to secure legal advice are protected by attorney-client privilege). Any communications Mr. Rancke had concerning plaintiff's employment or the termination of his employment were confidential communications

---

[3] Plaintiff initially noticed Ms. Moore's deposition in November 2004, then cancelled Ms. Moore's deposition at the last moment. *See* Further Scheduling Order (Dec. 30, 2004) (requiring plaintiff to reimburse Defendants' counsel for time previously spent in preparation for depositions canceled at the last minute.)

with MassMutual or Babson employees for purposes of providing legal advice or with MassMutual's counsel following receipt of plaintiff's EEOC charge of discrimination. *See* Affidavit of Robert K. Rancke ("Rancke Aff."), ¶ 5. Such communications are protected by the attorney-client privilege or the work-product doctrine. Because there is no support in the scanty record in this case for any contention that Mr. Rancke acted other than as an attorney engaged in communications with a client for purposes of providing legal advice or in consultation with other attorneys, plaintiff has failed to meet his burden with respect to the second *Shelton* factor. *See, e.g., Mandorico*, 181 F.R.D. at 212 (entering protective order prohibiting deposition of attorney when there was no evidence in the record to show that the proposed deponent acted in any capacity other than as attorney for his client).

Finally, plaintiff has not shown that any information he seeks through a deposition of opposing counsel is crucial to the preparation of his case. This is an employment discrimination case. Plaintiff claims that he was subjected to a hostile environment, constructively discharged or had his employment terminated and was subjected to unequal terms and conditions, all based on race. In addition, plaintiff has made a claim of infliction of emotional distress. As in-house counsel, Mr. Rancke "had nothing to do with this lawsuit except to represent h[is] client." *Shelton*, 805 F.2d at 1330. Mr. Rancke was not plaintiff's manager nor was he a witness or an actor with respect to events about which there are allegations in plaintiff's complaint. *See* Rancke Aff., ¶¶ 5-6. In these circumstances, Mr. Rancke's testimony cannot be crucial to plaintiff's case. *See Shelton*, 805 F.2d at 1330 (improper to seek deposition of in house counsel when she did not design the allegedly defective jeep, have any duties in relation to the design of the jeep, and was not a witness to the accident in which plaintiffs were injured).

9

Because plaintiff cannot meet his burden of demonstrating the need to depose opposing counsel under the *Shelton* analysis, the Defendants' motion to quash or for a protective order prohibiting the deposition of Mr. Rancke should be allowed. Further, plaintiff should be required to reimburse the Defendants for the costs they have incurred in opposing this harassing practice.

## IV.    Conclusion

For the foregoing reasons, the Defendants' Motion to Quash or for Protective Order Regarding Deposition Notice of Robert K. Rancke should be allowed and the Defendants should be awarded their costs incurred in the preparation of this motion.

                                                  The Defendants,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY (a/k/a
MASSMUTUAL FINANCIAL GROUP)
and DAVID L. BABSON & COMPANY, INC.
(a/k/a DAVID L. BABSON AND COMPANY)
By Their Attorneys:

Dated: March 24, 2005        /s/ Katherine A. Robertson
Francis D. Dibble, Jr.
 BBO No. 123220
Katherine A. Robertson
 BBO No. 557609
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115-5507
Tel:  (413) 781-2820
Fax: (413) 272-6804

#291402

10