UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-CV-11470 MAP

| | | |
|---|---|---|
| ISAAC WILLIAMS, JR., | ) | |
| Plaintiff | ) | |
| v. | ) | MASSMUTUAL'S |
| | ) | MEMORANDUM IN |
| MASSACHUSETTS MUTUAL LIFE | ) | SUPPORT OF |
| INSURANCE COMPANY (a/k/a | ) | MOTION FOR |
| MASSMUTUAL FINANCIAL GROUP) | ) | SUMMARY JUDGMENT |
| and DAVID L. BABSON & COMPANY, INC. | ) | |
| (a/k/a DAVID L. BABSON AND COMPANY), | ) | |
| Defendants | ) | |

## I.    Introduction

In or around April 2002, plaintiff Isaac Williams, Jr., an employee of David L. Babson &

Company, Inc. (now Babson Capital Management, LLC) ("Babson"), left his position as Director

of Corporate Communications for Babson on a short-term disability leave.  Plaintiff left work

shortly after an April 26, 2002 meeting with Susan A. Moore, Babson's Director of Human

Resources, and Larry N. Port, a Senior Vice President and Deputy Counsel of Massachusetts

Mutual Life Insurance Company ("MassMutual"), concerning a complaint about inappropriate

communications made to MassMutual against plaintiff by a college student whom plaintiff met

while he was at the University of Virginia on a recruiting trip as a representative of Babson and

its parent company, MassMutual.  Plaintiff never returned to work at Babson.

On or around December 10, 2002, plaintiff filed a charge of discrimination ("Charge")

with the Equal Employment Opportunity Commission ("EEOC") against his employer, Babson,

and Babson's parent company, MassMutual, alleging that he had been discriminated against on

the basis of race (African-American).  On May 9, 2003, the EEOC dismissed plaintiff's Charge

because the evidence submitted failed to indicate that a violation of the law had occurred.  On or

around August 8, 2003, plaintiff filed this action against Babson and MassMutual, alleging in the complaint that:  he had been subjected to a hostile work environment in violation of Title VII (Count I); he had been discriminated against by the elimination of his position and constructive termination of his employment because of race in violation of Title VII (Count II); he had been discriminated against on the basis of race in the terms and condition of his employment and its termination in violation of 42 U.S.C., § 1981 ("Section 1981") (Count III); he had been subjected to a hostile environment and constructively discharged because of race in violation of Massachusetts General Laws ch. 151B, § 4 ("Chapter 151B") (Count IV); and the defendants had negligently and intentionally inflicted emotional distress on him by surveillance conducted in connection with his application for long-term disability benefits (Count V).

MassMutual and Babson have each moved for summary judgment on all counts in plaintiff's complaint.  In support of MassMutual's Motion for Summary Judgment, MassMutual adopts herein by reference each of the arguments made by Babson in Babson's Memorandum in Support of Motion for Summary Judgment for dismissal of Counts I through V of plaintiff's complaint.  MassMutual has, in addition, moved for summary judgment on Counts I, II, III and IV of plaintiff's complaint on the basis that MassMutual was not plaintiff's employer and cannot, therefore, be liable to plaintiff for alleged discrimination in employment under Title VII, Section 1981 or Chapter 151B.

## II.    Relevant Facts

MassMutual's Statement of Material Facts Not In Dispute ("Facts") is filed herewith and adopted by reference into this memorandum.  Specific paragraphs of the Facts are referred to herein by the designation "Facts, ¶  ."  References to Babson's Statement of Material Facts Not

in Dispute, filed in support of Babson's Motion for Summary Judgment, are referred to herein by

the designation "Babson Facts, ¶     ."

### III.    Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  "[C]onclusory allegations, improbable inferences, and

unsupported speculation" cannot defeat a properly supported motion for summary judgment.

*See, e.g., Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir.

2000).

### IV.    Argument

MassMutual cannot be liable to plaintiff under Title VII, Section 1981 or Chapter 151B

for alleged discrimination in employment unless plaintiff can prove that MassMutual was his

employer.  *See, e.g., Romano v. U-Haul Int'l,* 233 F.3d 655, 662 (1st Cir. 2000); *Russell v.*

*Enterprise Rent-A-Car Co. of Rhode Island,* 160 F. Supp.2d 239, 255 (D.R.I. 2001) (to be liable

under Title VII, defendant "must qualify as plaintiff's employer"); *Cooper v. Southern Co.,* 260

F. Supp.2d 1295, 1297 n.1 (N.D. Ga. 2003) (plaintiff must be employee to bring Section 1981

suit alleging employment discrimination; analysis of whether party is an employer is the same

under Title VII and Section 1981); Mass. Gen Laws ch. 151B, § 4 (providing that discrimination

by an employer is an unlawful practice).

Courts generally "presume the separateness of legally distinct corporate entities."

*Darden v. DaimlerChrysler North Am. Holding Corp.,* 191 F. Supp.2d 382, 395 (S.D.N.Y.

2002).  The well-established principle of "[l]imited liability prevents a parent corporation from

being held responsible for the acts of its subsidiaries unless the separateness of the entities is a sham and 'there is an absence of an arms-length relationship among the companies.'" *Romano v. U-Haul Int'l,* 233 F.3d 655, 666 (1st Cir. 2000), *quoting Knowlton v. Teltrust Phones, Inc.,* 189 F.3d 1177, 1184 (10th Cir. 1999). As an exception to the general rule of limited liability, federal and state courts have recognized that, under certain circumstances, a parent and a subsidiary corporation may be sued as a single employer under Title VII, Section 1981 and Chapter 151B. *See Romano,* 233 F.3d at 662; Cooper, 260 F. Supp.2d at 1297, n.1; *Hanke v. Genzyme Transgenics Corp.,* 2002 WL 1554913 at *4 (Mass. Super. June 13, 2002). Federal courts of appeals have differed, however, on what a plaintiff must show to hold a parent corporation liable for alleged discrimination against an employee of a subsidiary corporation.

In the *Romano* case, the First Circuit noted that it had "identified three 'recognized' methods for determining whether a single employer exists under Title VII:  the integrated-enterprise test, the corporate law 'sham' test, and the agency test," but had not decided "the issue of what the proper test for determining employer status under [federal antidiscrimination statutes] is." *Romano,* 233 F.3d at 665; 664. The decision in *Romano* provides little guidance on what test the First Circuit would adopt, if squarely faced with the question, for determining when a parent and subsidiary should be treated as a single employer under federal antidiscrimination statutes. In the *Romano* case, the parent corporation argued on appeal that the trial court should have used an agency test to address the issue. The First Circuit concluded that the parent corporation had waived the argument by failing to raise it below, and held, in view of the waiver, that the trial court had not committed plain error by relying on the integrated-enterprise test. *See Romano*, 233 F.3d at 662-665.

Decisions of the United States Supreme Court dictate that an agency test should be applied to determine when a parent corporation can be treated as the employer of an employee of a subsidiary or affiliated entity. The Supreme Court has observed repeatedly "that "'[i]n express terms, Congress has directed federal courts to interpret Title VII based on agency principles'" to determine the basis for, and limits of, an employer's liability. *Kolstad v. American Dental Ass'n.,* 527 U.S. 526, 541 (1999), *quoting Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754 (1998); *see also Meritor Savs. Bank, FSB v. Vinson,* 477 U.S. 57, 72 (1986) (noting that Congress wanted courts to look to agency principles for guidance on establishing the limits of an employer's vicarious liability for actions by employees). The Seventh Circuit, in the case of *Papa v. Katy Indus. Inc.,* 166 F.3d 937 (7th Cir. 1999), adopted an agency test, reasoning that an affiliated corporation should forfeit its limited liability "only if it *acts* to forfeit it—as by failing to comply with statutory conditions of corporate status, or misleading creditors of its affiliate, or configuring the corporate group to defeat statutory jurisdiction, or commanding the affiliate to violate the right[s] of one of the affiliate's employees." *Papa*, 166 F.3d at 941 (emphasis in original). The Seventh Circuit held that a parent corporation should be liable for discrimination against an employee of its subsidiary if the plaintiff could prove that the parent corporation had directed the discriminatory act, practice or policy of which the subsidiary's employee was complaining. *See Papa,* 166 F.3d at 941.[1]

Other federal courts of appeals have adopted, or applied, an integrated-enterprise test formulated by the United States Supreme Court in the context of labor disputes. *See Romano*, 233 F.3d at 662; 665 (citing cases). The integrated-enterprise test "examines four factors: (1)

---

[1] The Seventh Circuit identified two other situations in which a parent corporation could be liable for discrimination against the employee of a subsidiary: when the traditional conditions for "piercing the corporate veil" were met; and when a corporation was deliberately structured to avoid liability under antidiscrimination laws. *See Papa,* 166 F.3d at 940-941. Neither of these situations exists in this case. Babson complies with corporate formalities and is subject to federal and state antidiscrimination laws.

interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership." *Romano,* 233 F.3d at 662; *see also, e.g., Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5ᵗʰ Cir. 1997); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995); *Russell,* 160 F. Supp.2d at 255.  Under this test, a parent corporation will not be liable as the employer of a subsidiary's employee unless "upon review of the circumstances of the intercorporate relationship, [the parent] exercise[ed] a degree of control that exceed[ed] the control normally exercised by a parent corporation which is separate and distinct from the subsidiary corporate entity." *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6ᵗʰ Cir. 1983). Courts applying the integrated-enterprise test have held that "control of employment decisions is a primary consideration in evaluating employer status." *Romano*, 233 F.3d at 666.[2]

          As is set forth below, plaintiff's claims against MassMutual in Counts I through IV of his complaint should be dismissed because plaintiff cannot prove that Babson was acting as MassMutual's agent with respect to any allegedly discriminatory act or decision about which plaintiff complains.  If this Court applied an integrated-enterprise test, MassMutual could not be deemed plaintiff's employer because plaintiff cannot prove that MassMutual exercised undue control over Babson's total employment process or its management and operations.

## 1.  Babson Did Not Act as MassMutual's Agent Regarding Any Alleged Discrimination Against Plaintiff

          Plaintiff cannot show that MassMutual directed Babson to make any decision about the terms and conditions of plaintiff's employment at any time between January 2000, the date on which plaintiff became a Babson employee, through December 2002, when plaintiff's employment with Babson was terminated based on approval of his application for long-term

---

[2] So far as MassMutual has been able to determine, no Massachusetts appellate court has addressed whether, and, if so, in what circumstances, a parent corporation may be liable under Chapter 151B as an employer for alleged discrimination against an employee of a subsidiary.  The few courts in Massachusetts that have addressed the issue have followed federal law.  *See, e.g. Hanke,* 2002 WL 1554913 at *4 (citing additional cases).

disability benefits.  Plaintiff's supervisor, Edward Bickford, who was allegedly responsible for creating a hostile work environment and for seeking to deny plaintiff a bonus, was a Babson employee located in Babson's Cambridge office.  (Babson Facts, ¶¶ 5-9)  Babson employees made the decision that plaintiff's position would be eliminated based on their assessment of Babson's business needs and plaintiff's set of skills.  (Babson Facts, ¶ 20 .)  Plaintiff alleged in his complaint that MassMutual had a policy or practice of using disciplinary actions as a pretext for termination of minority employees.  MassMutual denies that it had (or has) a policy or practice of using progressive disciplinary and related procedures for discriminatory purposes and further denies that it discriminates against African-American employees or employees in any other protected class.  In any event, any such claim by plaintiff cannot support a contention that MassMutual should be held liable as plaintiff's employer because plaintiff has no evidence that Babson had any policy or practice of treating African-American employees differently than other employees, nor any evidence that MassMutual dictated or influenced Mr. Bickford's treatment or his evaluation of plaintiff's performance.  (Babson Facts, ¶¶ 16-17.)  There is no evidence that MassMutual dictated any other measure taken by Babson, personal to plaintiff, that affected the terms and conditions of plaintiff's employment.

MassMutual cannot be liable as plaintiff's employer because plaintiff cannot show that MassMutual "formulated or administered [any] specific personnel policies, or directed, commanded or undertook the specific personnel actions, of which the plaintiff [has] complain[ed]."  *Papa*, 166 F.3d at 942.

**2.  MassMutual's Participation in Babson's Total Employment Process was Extremely Limited and MassMutual Did Not Have Control or Authority Over Hiring Decisions**

If this court should determine that the integrated-enterprise test applies, MassMutual cannot be liable as plaintiff's employer unless plaintiff can show that "[MassMutual] exert[ed] 'an amount of participation [that wa]s sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions.'" *Romano,* 233 F.3d at 666, *quoting Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240-1241 (2d Cir.1995), *quoting Armbruster,* 711 F.2d at 1338.  One critical question under this test is "what entity made the final employment decisions relating to the person claiming discrimination." *Darden,* 191 F. Supp.2d at 387, *citing Cook,* 69 F.3d at 1240.  For the reasons set forth below, plaintiff cannot meet his burden of proof on the critical issue of centralized control of labor relations.

First, Babson, **not** MassMutual, controlled "the total employment process" from start to finish for Babson employees at plaintiff's level.  Babson's Human Resources Department staffed and managed the recruiting process for Babson.  (Facts, ¶ 16.)  Babson, not MassMutual, had authority to decide who would be hired by Babson.  (Facts, ¶ 17.)  Babson's managers were responsible for assigning duties and responsibilities to Babson employees.  (Facts, ¶ 18.)  Babson's compensation plan differed from MassMutual's compensation plan and Babson, not MassMutual, set compensation levels based on that plan for Babson employees at plaintiff's level.  (Facts, ¶¶ 18, 24.)  Babson's managers were responsible for employee discipline during the course of employment, and for decisions about involuntary employment terminations. (Facts, ¶¶ 18-19.)  Under a services agreement between Babson and MassMutual, Babson could, but was not required to, ask for MassMutual's assistance with certain personnel management services, including assistance with employee relations and equal employment opportunity

support.  Babson employees were informed that they could bring a concern about alleged discrimination or harassment to the attention of Babson or MassMutual.  (Facts, ¶¶ 20-21.) Babson's employees were free to interview, or apply through a job post system, for any open position at MassMutual or any other of its family of companies.  Babson and MassMutual's workforces, however, were separate and distinct and there was no interchange of employees. (Facts, ¶ 22.)

Second, MassMutual had no role as a decision maker or otherwise in the discriminatory treatment alleged by plaintiff.  Mr. Bickford, plaintiff's supervisor, who was allegedly responsible for creating a hostile work environment and seeking to deny plaintiff a bonus, was a Babson employee located in Babson's Cambridge office.  (Babson Facts, ¶ 8.)  Babson employees made the decision that plaintiff's position would be eliminated based on their assessment of Babson's business needs.  (Babson Facts, ¶¶ 19-22.)  Consultation about the elimination of plaintiff's position with members of MassMutual's Corporate Human Resources Division was for limited purposes, and primarily for ascertaining what assistance could be provided to plaintiff in finding a new position within MassMutual's family of companies. (Babson Facts, ¶ 25.)

The fact that, under a services agreement, MassMutual human resources personnel were available as one resource to receive complaints, if any, about alleged discrimination or harassment at Babson is not sufficient to hold MassMutual liable as plaintiff's employer.  *See, e.g., Mas Marques v. Digital Equip. Corp.,*  637 F.2d 24, 27 n.4 (1st Cir. 1980) (fact that parent expressed willingness to investigate plaintiff's complaint and cooperate with EEOC not sufficient to hold parent liable for alleged discrimination by subsidiary); *Russell,* 160 F. Supp.2d at 256 (that plaintiff complained about alleged discrimination to parent insufficient to establish

parent's liability for alleged discrimination by subsidiary).  MassMutual is entitled to judgment

on plaintiff's claims in Counts I through IV of the complaint because plaintiff cannot show that

MassMutual had significant participation in the "total employment process" at Babson or was

responsible for any alleged discrimination that is the basis of any of plaintiff's claims.  S*ee*

*Russell,* 160 F. Supp.2d at 16 (parent not liable under Title VII when subsidiary did not "need

[parent corporation's] permission or advice before hiring, firing, or rehiring employees); *Mas*

*Marques v. Digital Equip. Corp.,* 490 F. Supp. 56, 58 (D. Mass. 1980) (parent not liable for

employment decisions of subsidiary when subsidiary controlled decisions about recruitment,

hiring, training, promotion, termination and establishment of working conditions), *aff'd* 637 F.2d

24 (1st Cir. 1980); *contrast Cook,* 69 F.3d at 1241 (parent of subsidiary liable as employer when

plaintiff was hired and discharged by an employee of a parent corporation, applications for

employment with subsidiary went through parent, personnel status reports were approved by

parent, and all major employment decisions were cleared with parent).

### 3.  Plaintiff Cannot Show that MassMutual Exercised Unusual Control Over Babson's Management and Operations

Further, plaintiff cannot meet his burden of proof on the other factors in the integrated-

enterprise test because MassMutual did not exercise a degree of control over Babson that

exceeded the degree of control normally exercised by a parent over a subsidiary corporation.  *See*

*Armbruster,* 711 F.2d at 1338.  Some degree of "[c]ommon management and ownership are

ordinary aspects of a parent-subsidiary relationship" and should not be a basis for . . . "forfeiting

the protection of limited liability."  *Lusk,* 129 F.3d at 778.  While MassMutual was an indirect

majority owner of Babson, Babson was not a wholly-owned subsidiary of MassMutual.

MassMutual employees did not constitute a majority of Babson's Board of Directors.  (Facts ¶¶

2-3.)  This ownership and common management is normal in the parent-subsidiary relationship

and is not an appropriate basis for disregarding the separate entity status of Babson and

MassMutual. *See Lusk,* 129 F.3d at 778; *Russell,* 160 F. Supp.2d at 247, 256.

Babson and MassMutual operated in different locations; had separate and distinct

businesses; maintained separate business records; and presented themselves to regulators, clients

and prospective clients as separate and distinct, albeit related, entities. (Facts, ¶¶ 5-7; 11-12.)

Babson maintained its own finance department that handled all aspects of Babson's financial

operations, including, among other things, producing stand-alone audited financial statements.

Babson's bank accounts were not commingled with MassMutual's bank accounts. (Facts, ¶ 7.)

There is no evidence that MassMutual "ran [Babson] in a direct hands-on fashion,

establishing the operating practices and management practices of [Babson]." *Cook*, 69 F.3d at

1241. To the contrary, "there [were] separate corporate structures, facilities, work forces,

business records, bank accounts . . . [audited] financial statements, budgets and corporate reports,

and . . . the parent did not "control [the subsidiary's] sales goals or marketing strategies." *Mas

Marques,* 637 F.2d at 26; *see also Russell*, 160 F. Supp.2d at 239 (parent was not employer of

plaintiff when evidence showed that subsidiary maintained its own accounting, budgeting and

marketing; did not need parent's permission or advice before hiring, firing or rehiring; and did

not make final decision regarding plaintiff's employment). MassMutual cannot be deemed

plaintiff's employer for purposes of liability under Title VII, Section 1981 or Chapter 151B

because plaintiff cannot prove that Babson and MassMutual operated as a single integrated

enterprise.

There is no reason in this case to disregard the presumption that MassMutual and Babson

were separate corporate entities and that Babson, plaintiff's **actual** employer, is the **only**

appropriate defendant in this case. There is no dispute that plaintiff was a Babson employee: he

was Babson's Director of Corporate Communications, responsible for communicating Babson's messages internally and externally. Babson, not MassMutual, determined plaintiff's duties and responsibilities and controlled the terms and conditions of plaintiff's employment at all relevant times. Babson, not MassMutual, made the decision to eliminate plaintiff's position and, in December 2002, to terminate his employment with Babson. There is no evidence that MassMutual directed Babson in Babson's decisions about plaintiff's employment.

MassMutual is entitled to summary judgment on Counts I, II, III and IV in the complaint because MassMutual was not plaintiff's employer for purposes of federal or state antidiscrimination statutes.

### V.    Conclusion

For the foregoing reasons and for the reasons set forth in Babson's Memorandum in Support of Summary Judgment, MassMutual is entitled to judgment on all claims in plaintiff's complaint.

The Defendant,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY
By Its Attorneys:


Dated:   November 4, 2005

/s/ Katherine A. Robertson
Francis D. Dibble, Jr.
 BBO No. 123220
Katherine A. Robertson
 BBO No. 557609
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA  01115-5507
Tel:  (413) 781-2820
Fax: (413) 272-6804

Certificate of Service

I hereby certify that a true copy of the above document was served electronically upon the attorney of record for each party on November 4, 2005.

#308263

/s/ Katherine A. Robertson
Katherine A. Robertson