UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-CV-11470 MAP

| | | |
|---|---|---|
| ISAAC WILLIAMS, JR., | ) | |
|     Plaintiff | ) | |
| v. | ) | |
| | ) | |
| MASSACHUSETTS MUTUAL LIFE | ) | MASSMUTUAL'S |
| INSURANCE COMPANY (a/k/a | ) | STATEMENT OF |
| MASSMUTUAL FINANCIAL GROUP) | ) | MATERIAL FACTS |
| and DAVID L. BABSON & COMPANY, INC. | ) | NOT IN DISPUTE |
| (a/k/a DAVID L. BABSON AND COMPANY), | ) | |
|     Defendants | ) | |

## I. Introduction

Pursuant to Local Rule 56.1 of the Local Rules of the Federal District Court for the District of Massachusetts, the defendant, Massachusetts Mutual Life Insurance Company ("MassMutual"), submits the following statement of material facts of record as to which there is no genuine issue to be tried. As is set forth in the accompanying memoranda of law in support of MassMutual's Motion for Summary Judgment and the motion for summary judgment filed by Babson Capital Management, LLC (formerly known as David L. Babson & Company, Inc.) ("Babson"), the undisputed facts related to plaintiff's claim mandate summary judgment for MassMutual.

## II. Statement of Material Facts

1. Babson was founded as an investment management firm by David L. Babson in or around 1940. MassMutual acquired Babson in or around 1995. (Affidavit of James Masur ("Masur Aff."), ¶ 2.) (The Affidavit of James Masur is attached hereto as Exhibit 1.)

2. In 2000 and through 2002, when plaintiff Isaac Williams, Jr. was employed by Babson, David L. Babson & Company, Inc. was a Massachusetts business corporation that was

an indirect majority-owned subsidiary of MassMutual. Certain employees of Babson owned stock and stock options in DLB Acquisition Corporation, which was Babson's immediate parent corporation. (Masur Aff., ¶ 3.)

3. MassMutual employees have not been a majority on Babson's Board of Directors at any time since MassMutual acquired Babson. (Masur Aff., ¶ 4.)

4. Babson complied with all corporate formalities, including making required filings with the Massachusetts Secretary of State and the Securities and Exchange Commission ("SEC"). (Masur Aff., ¶ 5.)

5. Babson and MassMutual had separate and distinct businesses and presented themselves to regulators, clients and prospective clients as separate and distinct entities. Babson was an SEC-registered investment advisor providing investment management services to institutional investors, corporate and public pension plans, endowments, mutual funds, hedge funds, insurance companies, high net worth individuals and other capital market participants. Under the terms of a service agreement between Babson and MassMutual, Babson managed MassMutual's investments. (Masur Aff., ¶ 6.)

6. MassMutual's annual report shows that its core businesses included its domestic life insurance business; its annuity business; its disability income insurance business; its large corporate market business; and its retirement services division. (Masur Aff., ¶ 7.)

7. Babson staffed and maintained its own finance department that handled all aspects of Babson's financial operations, including budgeting, producing stand-alone audited financial statements, processing invoices, generating bills, authorizing expense payments and maintaining bank accounts in Babson's name. Babson's bank accounts were not commingled with MassMutual's bank accounts. (Masur Aff., ¶ 8.)

8. Babson kept business records separate from MassMutual's business records, including, for example, client contracts and client statements. (Masur Aff., ¶ 9.)

9. Babson was responsible for setting its own sales goals and determining its own marketing strategies. To this end, Babson had its own employees responsible for marketing and advertising, client services, sales, and internal and external corporate communications. (Masur Aff., ¶ 10.)

10. Babson is a solvent entity capable of meeting its financial obligations. (Masur Aff., ¶ 11.)

11. MassMutual and Babson operate in different locations. MassMutual's principal place of business is 1295 State Street, Springfield, MA. Babson has two primary office locations, one at 470 Atlantic Avenue in Boston, MA (this office recently moved from a location in Cambridge, MA) and the other at 1500 Main Street in Springfield, MA. (Second Affidavit of Susan A. Moore ("Second Moore Aff."), ¶ 2.) (The Second Affidavit of Susan A. Moore is attached hereto as Exhibit 2.)

12. Approximately 150 Babson employees work in the Boston office; approximately 400 work in the Springfield office. Babson has an additional 100 or so employees in Babson satellite offices in locations across the country, including, for example, Washington, D.C.; Chicago, Illinois; Charlotte, North Carolina; and Newport Beach, California. (Second Moore Aff., ¶ 2.)

13. Babson's Director of Human Resources currently reports to William Glavin, President and Chief Executive Officer of Babson. In 2002, beginning in or around April, Babson's Director of Human Resources reported to Stuart Reese, who was at that time the Chief Executive Officer of Babson. (Second Moore Aff., ¶ 3.)

14. Babson's H.R. Department employs twelve individuals, of whom seven work extensively or exclusively in various areas of human resources administration. (Second Moore Aff., ¶ 4.)

15. Most of Babson's written human resources policies are consistent with human resources policies that apply to MassMutual employees. MassMutual, however, has very limited participation in the total human resources process at Babson or in the management of Babson's approximately 600 employees. (Second Moore Aff., ¶ 5.)

16. Babson does not rely on MassMutual's recruiting staff to assist in filling open positions at Babson. Babson's H.R. Department is responsible for Babson's recruiting effort, including placing advertisements and job availability postings on websites as appropriate, screening resumes, coordinating with the hiring manager to schedule applicant interviews, and communicating offers to successful applicants. (Second Moore Aff., ¶ 6.)

17. Babson's managers are responsible for decisions about new hires and promotions for the Babson workforce. MassMutual does not participate in Babson's hiring or promotion decisions unless the decision concerns a position at the most senior level of Babson's management, such as a member of Babson's Board of Directors or someone expected to be among a small group of Babson's most highly compensated employees. (Second Moore Aff., ¶ 7.)

18. Babson's managers are responsible for decisions about salary increases and bonus awards and assignments of duties and responsibilities, and, in consultation with Babson's H.R. Department, for decisions about employee discipline and termination of employment. MassMutual does not participate in Babson's decisions about salary increases, bonus awards, assignments of duties and responsibilities, employee discipline or employment terminations

unless the decision concerns compensation for a Babson employee at the most senior level of Babson's management. (Second Moore Aff., ¶ 8.)

19. Members of Babson's H.R. Department are responsible for investigating any employee concerns or complaints of alleged unfair treatment, discrimination or harassment, or requests for accommodation. Mary Thornton, a member of Babson's H.R. Department in Babson's Boston office, and Susan Moore, Babson's Director of Human Resources, are identified in written materials distributed to Babson's employees as the individuals to whom any such concerns should be addressed. (Second Moore Aff., ¶ 9.)

20. Under a services agreement between Babson and MassMutual, effective January 1, 2000, Babson could, but was not required to, ask for MassMutual's assistance with certain personnel management services, including assistance with employee relations and equal employment opportunity support. (Second Moore Aff., ¶ 10.)

21. In 2002, Ms. Thornton and Ms. Moore also were identified as the individuals to whom Babson employees should address concerns about alleged unfair, discriminatory or harassing treatment. Ms. Thornton was employed by Babson. Ms. Moore was employed by MassMutual through on or around April 1, 2002, and was, thereafter, employed by Babson. (Second Moore Aff., ¶ 11.)

22. Babson's employees are free to interview, or apply through a job post system, for any open position at MassMutual or any other of its family of companies. However, Babson and MassMutual's work forces are separate, and there is no interchange of employees. (Second Moore Aff., ¶ 12.)

23. Babson has sole authority to make decisions about any internal reorganizations or re-structuring of its departments. For example, Babson initiated an internal self-study in 2003

that led to the creation of a centralized operations department and an expansion of Babson's marketing team to assist with product development and branding. MassMutual was not required to approve these organizational changes prior to their implementation. (Second Moore Aff., ¶ 13.)

24. MassMutual runs Babson's payroll. Babson, however, maintains a separate compensation database to support Babson's short and long-term incentive compensation, or bonus plans, which are different from MassMutual's short and long-term incentive compensation plans. Babson does not use the STAR employee bonus and rating system used by MassMutual and Babson's bonus plans do not apply to MassMutual employees. (Second Moore Aff., ¶ 14.)

        The Defendant,
MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY
By Its Attorneys:

Dated: November 4, 2005      /s/ Katherine A. Robertson
Francis D. Dibble, Jr.
 BBO No. 123220
Katherine A. Robertson
 BBO No. 557609
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, MA 01115-5507
Tel: (413) 781-2820
Fax: (413) 272-6804

Certificate of Service

I hereby certify that a true copy of the above document was served electronically upon the attorney of record for each party on November 4, 2005.

/s/ Katherine A. Robertson
Katherine A. Robertson

310588