UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 03-CV-11470 MAP

| | |
|---|---|
| ISAAC WILLIAMS, JR., ) | |
|     Plaintiff ) | |
| v. ) | BABSON'S |
| ) | MEMORANDUM IN |
| MASSACHUSETTS MUTUAL LIFE ) | SUPPORT OF |
| INSURANCE COMPANY (a/k/a ) | MOTION FOR |
| MASSMUTUAL FINANCIAL GROUP) ) | SUMMARY JUDGMENT |
| and DAVID L. BABSON & COMPANY, INC. ) | |
| (a/k/a DAVID L. BABSON AND COMPANY), ) | |
|     Defendants ) | |

## I.     Introduction

In or around April 2002, plaintiff Isaac Williams, Jr., an employee of David L. Babson & Company, Inc. (now Babson Capital Management, LLC) ("Babson"), left his position as Director of Corporate Communications for Babson on a short-term disability leave.  Plaintiff left work shortly after an April 26, 2002 meeting with Susan A. Moore, Babson's Director of Human Resources, and Larry N. Port, a Senior Vice President and Deputy Counsel of Massachusetts Mutual Life Insurance Company ("MassMutual"), concerning a complaint about inappropriate communications made to MassMutual against plaintiff by a college student whom plaintiff met while he was at the University of Virginia on a recruiting trip as a representative of Babson and its parent company, MassMutual.  Plaintiff never returned to work at Babson.

Plaintiff remained out of work until he exhausted the six months of leave to which he was entitled under Babson's short-term disability program.  Plaintiff's employment with Babson was terminated in or around December 2002, consistent with the provisions of Babson's Long-Term Disability Plan ("LTD Plan"), when his application for long-term disability benefits was approved.

On or around December 10, 2002, plaintiff filed a charge of discrimination ("Charge") against Babson and MassMutual with the Equal Employment Opportunity Commission ("EEOC") alleging that he had been discriminated against on the basis of race (African-American). The respondents filed their Statement of Position on January 24, 2003. On May 9, 2003, the EEOC dismissed plaintiff's Charge because the evidence submitted failed to indicate that a violation of the law had occurred. On or around August 8, 2003, plaintiff filed this action, alleging in the complaint that: he was subjected to a hostile work environment in violation of Title VII (Count I); the defendants discriminated against him by eliminating his position and constructively terminating his employment because of race in violation of Title VII (Count II); he was discriminated against on the basis of race in the terms and condition of his employment and was terminated in violation of 42 U.S.C., § 1981 ("Section 1981") (Count III); he was subjected to a hostile environment and constructively discharged because of race in violation of Massachusetts General Laws ch. 151B, § 4 ("Chapter 151B") (Count IV); and the defendants negligently and intentionally inflicted emotional distress on plaintiff by surveillance conducted in connection with plaintiff's application for long-term disability benefits (Count V).

Babson has moved for summary judgment on all counts in plaintiff's complaint on the following grounds:

- Babson is entitled to judgment on plaintiff's claims of hostile environment (Count I) and constructive discharge (Count II) under Title VII because plaintiff failed timely to file an administrative charge as to these claims;

- Babson is entitled to judgment on claims asserted by plaintiff under Chapter 151B (Count IV) because plaintiff failed timely to file an administrative complaint as to any claim asserted under Chapter 151B;

- Babson is entitled to judgment on plaintiff's claims under Title VII (Count II) and Section 1981 (Count III) that his position was eliminated or his employment terminated based on race because plaintiff cannot make out a prima facie case as to these claims and because Babson has articulated nondiscriminatory business

2

- reasons for those decisions and no reasonable jury could find that those reasons were a cover-up for a discriminatory decision;

- Babson is entitled to judgment on plaintiff's claim of hostile environment and constructive discharge under Section 1981 (Count III) because plaintiff cannot prove a severe and pervasively hostile work environment that altered the conditions of his employment or that any alleged harassment caused him to leave the workplace; and

- Babson is entitled to judgment on plaintiff's claims of intentional and negligent infliction of emotional distress (Count V) because plaintiff cannot show that Babson caused the alleged distress that is the basis of these claims.

## II.     Relevant Facts

Babson's Statement of Material Facts Not In Dispute ("Facts") is filed herewith and adopted by reference into this memorandum. Specific paragraphs of the Facts are referred to herein by the designation "Facts, ¶  ."

## III.     Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[C]onclusory allegations, improbable inferences, and unsupported speculation" cannot defeat a properly supported motion for summary judgment. *See, e.g., Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000).

## IV.     Argument

**1.     Babson Is Entitled To Judgment On Plaintiff's Hostile Environment And Constructive Discharge Claims Under Title VII Because Plaintiff Failed Timely To File A Charge With The EEOC**

In a deferral state such as Massachusetts, a plaintiff bringing a claim under Title VII must file his discrimination charge with the EEOC within 300 days "after the alleged unlawful

3

employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). When, as in this case, the alleged unlawful employment practice is a hostile work environment or a constructive discharge, plaintiff must prove that at least one incident of harassment, substantially related to earlier incidents of harassment alleged to form the basis of the claim, fell within the 300-day period preceding the filing of the charge. *See National R.R. Passenger Corp v. Morgan,* 536 U.S. 101, 117-122 (2002). Babson is entitled to judgment on plaintiff's claims of hostile environment and constructive discharge under Title VII because plaintiff cannot prove that any alleged harassment occurred within the 300 days immediately preceding the filing of his Charge.

Plaintiff filed his Charge on December 10, 2002. (Facts, ¶ 47.) To prove that his claims of hostile environment or constructive discharge under Title VII were timely filed, plaintiff must be able to prove that at least one harassing act occurred on or after February 13, 2002. He cannot do so. Plaintiff bases his hostile environment and constructive discharge claims on the following allegations. In or around October 2000, plaintiff began reporting to Edward Bickford. (Facts, ¶ 5.) According to plaintiff, Mr. Bickford began harassing plaintiff shortly after plaintiff began reporting to him. (Facts, ¶ 9.) Plaintiff has not alleged that any other Babson (or MassMutual) employee engaged in conduct that was harassing based on race. (Facts, ¶ 14.) According to plaintiff, soon after he began reporting to Mr. Bickford, he finished a project and Mr. Bickford said to him, "that's a good boy." Plaintiff claims that Mr. Bickford said "good boy" to him a total of 25 to 50 times. Mr. Bickford never used any other term or phrase that plaintiff deemed offensive based on race.[1] Plaintiff could not identify **any** specific occasion on which Mr.

---

[1] During his deposition, plaintiff claimed that Mr. Bickford treated him differently by looking over his shoulder and second-guessing everything that plaintiff did. Plaintiff was unable to identify any other employee, supervised by Mr. Bickford, whom Mr. Bickford treated differently than he treated plaintiff. (Facts, ¶ 13). Such conclusory allegations are not competent evidence of different or harassing treatment based on race. *See, e.g., Frankel v. United States Postal Serv.,* 96 F. Supp.2d 19, 25-26 (D. Mass. 2000) (disregarding conclusory assertions of alleged different treatment based on a protected characteristic*); contrast Landrau-Romero v. Banco Popular de Puerto Rico,* 212 F.2d 607, 609 (1st Cir. 2000) (supervisor treated plaintiff differently by requiring him to leave note on his desk

Bickford said "good boy" in 2000, 2001 or 2002, nor could he identify anyone whom he believed heard Mr. Bickford use the phrase. Plaintiff could not recall whether Mr. Bickford used these words **at any time** in 2002. (Facts, ¶ 9.) Plaintiff failed to identify any occasion on which an allegedly offensive comment was directed at him within the 300 days preceding the filing of his Charge. Plaintiff's only other evidence of so-called harassment by Mr. Bickford was Mr. Bickford's unfavorable evaluation of plaintiff's performance in 2001. Mr. Bickford delivered this evaluation to plaintiff, and discussed it with him, in January 2002. (Facts, ¶ 15.)

Plaintiff has the burden of proving that a discriminatory act occurred within the 300 days preceding his administrative filing. *See Mack v. Great Atl. and Pac. Tea Co.*, 871 F.2d 179, 181-182 (1st Cir. 1989). Plaintiff failed, in his deposition testimony, in his verified complaint and in the Charge he filed with the EEOC, to identify any statement or any act alleged to be harassing that occurred on or after February 13, 2002. Babson is entitled to judgment on plaintiff's hostile work environment and constructive discharge claim in Court I of the complaint because plaintiff failed timely to file an administrative complaint as to those claims. *See Morgan,* 536 U.S. at 122; *see also Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 395 (1st Cir. 2002) (hostile work environment claim is timely filed only if an act contributing to the allegedly hostile environment took place within the 300-day statutory time period).

    **2.    Babson Is Entitled To Judgment On Plaintiff's Claims Under Chapter 151B Because Plaintiff Failed Timely To File An Administrative Charge**

Plaintiff's claims under Chapter 151B merit little discussion. At the relevant time, Chapter 151B, § 5, provided as follows: "Any complaint filed pursuant to this section must be

---

every time he went on break, to the bathroom or to get a drink of water and yelled at plaintiff in front of his co-workers).

5

so filed within **six months** after the alleged act of discrimination."[2] Plaintiff, as previously noted, filed his administrative complaint on December 10, 2002. To preserve claims of hostile work environment or constructive discharge under Chapter 151B, plaintiff would have to identify some discriminatory or harassing act by Babson on or after June 10, 2002. Plaintiff left the workplace on April 29, 2002 and never returned. His employment was terminated on or around December 13, 2002 when his application for long-term disability benefits was approved, consistent with the terms of the LTD Plan. (Facts, ¶ 53.) Plaintiff was not in the workplace and cannot possibly identify any comment or other alleged act of harassment that occurred on or after June 10, 2002. Babson is entitled to dismissal of any claims asserted by plaintiff under Chapter 151B because plaintiff's Charge was not timely filed as to any such claims. *See Cuddyer v. Stop & Shop Supermarket Co.,* 434 Mass. 521 (2001) (for claim to be timely filed under Chapter 151B, plaintiff must be able to show harassing conduct within six months preceding the filing of an administrative charge).[3]

> **3. Plaintiff Cannot Make Out A Prima Facie Claim Of Discrimination Based On The Proposed Elimination Of His Position And Cannot Prove That Babson's Nondiscriminatory Reasons For The Proposed Elimination Of His Position Or The Termination Of His Employment Were A Pretext For Discrimination**

The "well-established McDonnell-Douglas-Burdine-Hicks burden-shifting framework" applies to Babson's motion for summary judgment. *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir. 2003)(citing cases). To make out a prima facie case of race discrimination

---

[2] In November 2002, Section 5 of Chapter 151B was amended to provide that, as to claims arising on or after November 5, 2002, the effective date of the amendment, the limitation period for filing a complaint with the Massachusetts Commission Against Discrimination would be three hundred (300) days. The November 2002 amendment does not apply to this case.

[3] As is set forth below, any claim by plaintiff under Chapter 151B that the termination of his employment was discriminatory because of race would be frivolous. Plaintiff cannot show that he was treated differently than employees outside of the protected class with respect to the December 2002 termination of his employment because every employee whose application for long-term disability benefits under the LTD Plan is approved has his or her employment terminated consistent with the provisions of the LTD Plan. (Facts, ¶ 53.)

based on the elimination of his position, plaintiff must establish that: (1) he was within the protected class; (2) he performed his job satisfactorily; (3) he was discharged from his employment; and (4) Babson did not treat race neutrally or retained personnel outside of his protected class. *See Lewis v. City of Boston,* 321 F.3d 207 (1st Cir. 2003) (setting out elements of a prima facie case in a position elimination or reduction in force case). Based on undisputed facts in this case, plaintiff cannot establish the third or fourth elements of a prima facie case as to a claim of discrimination based on the anticipated elimination of his position. Even if he could establish those elements, which he cannot, Babson has proffered nondiscriminatory business reasons why it planned to eliminate plaintiff's position. Babson also has proffered a nondiscriminatory business reason for the December 2002 termination of plaintiff's employment. Plaintiff has no evidence to support a reasonable inference that the reasons given by Babson were false or a pretext for racial discrimination. Babson is entitled to judgment on plaintiff's claims under Title VII and Section 1981 that the elimination of his position or his employment termination was discriminatory. *See, e.g., Lewis,* 321 F.3d at 216-217.

      a. **Position Elimination.** On or around March 13, 2002, Stuart Reese, then Babson's Chief Executive Officer, told plaintiff that his position as Babson's Director of Corporate Communications was going to be eliminated. Mr. Reese told plaintiff that he would be given four to six months to look for a different position within the MassMutual family of companies. (Facts, ¶ 23.) Plaintiff received special consideration from Babson in connection with the anticipated elimination of his position. Babson's usual policy with respect to a position elimination is to give the affected employee sixty days pay in lieu of notice or provide a sixty-day notice period during which the employee may use a job post system to seek another position. If the employee does not find a position within sixty days, then the employee is discharged.

Because Mr. Reese desired to retain plaintiff as an employee within the MassMutual family of companies, Mr. Reese offered plaintiff an extended four to six month period to find an alternative position. (Facts, ¶ 25.)

Babson did not terminate plaintiff's employment in July or September 2002 (four or six months after Babson notified plaintiff of the anticipated elimination of his position). Babson did not terminate plaintiff's employment until on or around December 13, 2002, when plaintiff had exhausted his short-term disability benefits and his application for long-term disability benefits under the LTD Plan had been approved. (Facts, ¶ 53.) Plaintiff did not pursue his search for another position because he left the workplace on April 29, 2002 during Babson's investigation into the complaint of inappropriate conduct made by T.J. Plaintiff never returned to work at Babson. (Facts, ¶ 46.) But for these intervening events, plaintiff's internal job search might have been successful and he could very well have remained employed within the MassMutual family of companies. Any claim by plaintiff that his employment would have been terminated based on the anticipated elimination of his position is purely speculative. Plaintiff cannot make out the third element of a prima facie case because he cannot prove that the proposed elimination of his position caused his employment termination. *See Jorge v. Rumsfeld,* 404 F.3d 556, 562 n.4 (1st Cir. 2005) (declining to consider plaintiff's speculative claim that transfer was prelude to discriminatory termination).

Furthermore, plaintiff cannot prove that Babson failed to treat race neutrally in connection with its plan to eliminate his position. Plaintiff has asserted that Babson did not eliminate his position and that his duties and responsibilities were assumed by Albert Rocheteau, who was hired by Babson on or around May 10, 2002 as a director of marketing. (Facts, ¶ 28.) Based on this assertion, plaintiff claims that Babson's anticipated elimination of his position was

8

a pretext to get rid of him because of his race. While Babson denies that Mr. Rocheteau replaced plaintiff, Babson agrees that Mr. Rocheteau assumed some responsibilities, related to Babson's website and advertising, that appeared in plaintiff's job description. (Facts, ¶ 29.) This fact does not assist plaintiff in proving a prima facie claim of discrimination. First, merely demonstrating that some duties and responsibilities are assigned to another employee in connection with the elimination of a position does not raise a reasonable inference of discrimination because, in a position elimination situation, some responsibilities generally are reassigned. *See Lewis,* 321 F.3d at 216 (delegation of some of plaintiff's duties to other employees following elimination of his position did not satisfy his burden of proof as to a prima facie case). Most important, Babson did not delegate responsibilities that had been assigned to plaintiff to someone outside of plaintiff's protected class: like plaintiff, Mr. Rocheteau is African-American. (Facts, ¶ 30.) Plaintiff's contention that the plan to eliminate his position was a sham and that he was replaced before his employment was terminated **cannot** raise an inference of discrimination when the individual whom plaintiff alleges replaced him was within the same protected class as plaintiff. *See Lewis,* 321 F.3d at 218 (most telling as to lack of discriminatory animus was that employer offered position for which plaintiff applied to an individual in plaintiff's protected class); *see also Griffin v. Ambika Corp.*, 103F. Supp.2d 297, 311 (S.D.N.Y. 2000) (when plaintiffs were replaced by members of the same racial minority, the obvious inference was that discrimination was not a motivating factor in plaintiffs' employment termination).

  Even if plaintiff could make out a prima facie case of discrimination based on the anticipated elimination of his position, which he cannot, he could not prove that Babson's nondiscriminatory business reasons for its plan to eliminate plaintiff's position were "a sham and that discriminatory animus sparked [Babson's] actions." *Straughn v. Delta Air Lines, Inc.,* 250

9

F.3d 23, 24 (1st Cir. 2001). Mr. Reese and Kevin McClintock, Managing Director of Equities for Babson, jointly made the decision to eliminate plaintiff's position. Plaintiff has not alleged, and has no evidence to show, that either Mr. Reese or Mr. McClintock was biased on the basis of race. They decided to eliminate the position because, in early 2002, Babson had a limited need for the primary functions plaintiff was performing. Mr. Reese, then Babson's CEO, believed that Babson needed to evolve before the company spent time and resources on external public relations, and he further believed that a structure was in place for internal communications that could be administered as a process without a need for a Director of Communications. (Facts, ¶ 22.) At or around the time Mr. Reese told plaintiff that his position was going to be eliminated, Babson also ended its agreement with W.T. Blasé, its outside public relations firm. Plaintiff was the point person at Babson for W.T. Blasé, and this role constituted a major portion of his responsibilities. Mr. Reese simply did not believe that Babson needed someone on a full-time basis in the Director of Communications position in 2002. (Facts, ¶ 22.)

      Plaintiff has no evidence to show that Babson's reasons for its decision to eliminate the position of Director of Communications in 2002 were false or that the decision was made because of discriminatory animus. Babson did not appoint an acting Director of Corporate Communications in 2002 during plaintiff's short-term disability leave and had no such position in 2003. Babson did not hire a new Director of Corporate Communications until January 2004, some two years after the decision was made to eliminate plaintiff's position, and after an intensive internal study under the direction of a new Chief Operating Officer who joined Babson in January 2003 with responsibility for building and developing Babson's distribution, operations, systems and finance areas. (Facts, ¶¶ 31-32.) When a substantial period of time elapses between an employer's decision to eliminate a position and its decision to rehire

someone performing similar duties, no inference arises that the initial position elimination was a pretext for discrimination.  *See Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir. 1992) (replacement nine months after plaintiff's position was eliminated not relevant to inference of age-based discrimination); *Bruce v. Office Depot, Inc.,* slip op. 2005 WL 1620399 (S.D. Ohio July 5, 2005) (employer's hiring of account manager eleven months after plaintiff's termination did not raise genuine issue of material fact concerning whether plaintiff could prove age discrimination by showing he was replaced by someone substantially younger).

      Plaintiff has no evidence that would raise an inference that the proposed elimination was a pretext for discrimination.  Plaintiff cannot show that any other employee similarly situated to him, outside of the protected class, was treated differently.  *See, e.g., Rodriguez-Cuervos v. Wal-Mart Stores, Inc.,* 181 F.3d 15, 21 (1st Cir. 1999) (plaintiff claiming disparate treatment based on race must have proof that a proposed analogue, similarly situated in all material respects, was treated differently).  In fact, Babson intended to treat plaintiff better than any other employee facing a position elimination.  (Facts, ¶¶ 24-25.)  Plaintiff's allegation of a pattern of discrimination is wholly without evidentiary foundation:  at his deposition, plaintiff could not identify **any** other African-American employee of Babson whom he alleged had been discriminated against because of race.  (Facts, ¶¶ 17-18.)

      Babson is entitled to summary judgment on plaintiff's claims of discrimination based on the anticipated elimination of plaintiff's position because he cannot prove that the plan resulted in the termination of his employment, that Babson failed to treat race neutrally in the process, or that Babson planned to eliminate the position because of plaintiff's race.  *See, e.g., Lewis,* 321 F.3d at 215-216 (summary judgment for employer when plaintiff could not show that employer failed to treat race neutrally in elimination of plaintiff's position); *Benoit,* 331 F.3d at 174

(summary judgment for employer when plaintiff did not provide sufficient evidence for a jury to disbelieve employer's stated reason for termination or that reason masked discriminatory intent).

      **b. Employment Termination.** Any claim by plaintiff that the termination of his employment could raise an inference of discrimination is frivolous. Plaintiff remained a Babson employee until his employment was automatically terminated based on the exhaustion of his short-term disability benefits and approval of his application for long-term disability benefits. (Facts, ¶ 53.) Plaintiff was treated the same as any other employee – without regard to membership in a protected class – whose application for long-term disability benefits is approved. (Facts, ¶ 53.) Plaintiff cannot show that Babson failed to treat race neutrally in connection with the termination of his employment. *See, e.g., Straughn,* 250 F.3d at 44 (summary judgment for employer when plaintiff failed to generate disputed issue of fact as to pretext or disparate treatment).

      **4.    Babson Is Entitled To Dismissal Of Plaintiff's Claims Under Section 1981 Because Plaintiff Was Not Subjected To A Hostile Work Environment, Nor Was He Constructively Discharged From His Employment**

      **a. Hostile Environment Claim.** To establish a claim of hostile work environment, plaintiff must allege and prove that he has been subjected to a "workplace . . . permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *Morgan* 536 U.S. at 116, *quoting Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (additional citations omitted), and that the alleged harassment was because of his membership in a protected group. *Elmahdi v. Marriott Hotel Servs., Inc.,* 339 F.3d 645, 652 (8th Cir. 2003). Whether an environment is hostile is determined by looking at all the circumstances, including the frequency of the alleged discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *See, e,g., Landrau-Romero v. Banco Popular de Puerto Rico,* 212 F.3d 607, 613 (1st Cir. 2000). "[O]ffhand comments, and isolated incidents (unless extremely serious) [do] not amount to discriminatory changes in the 'terms and conditions of employment.'" *Clark County School Dist. v. Breeden,* 532 U.S. 268, 271 (2001), *quoting Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted).

Plaintiff's hostile environment claim is focused on the conduct of Mr. Bickford and is based on the allegation that Mr. Bickford was condescending, the evidence of which is his alleged use of the term "good boy"; that he second-guessed plaintiff and looked over plaintiff's shoulder; and that he gave plaintiff an unfavorable performance evaluation in January 2002. (Facts, ¶¶ 9, 12, 15.) Plaintiff's generalized and conclusory allegations of different treatment and allegedly racially tinged remarks fall far short of meeting the standard of proof for a hostile environment claim.

Plaintiff's claim that Mr. Bickford treated him differently by second-guessing his work and giving him an unfavorable performance evaluation in January 2002 contributes nothing of evidentiary value to support his hostile environment claim. There is nothing inherently discriminatory about an unfavorable performance evaluation or the exercise of control by a manager. Plaintiff could not identify any other specific employee who was treated differently by Mr. Bickford in terms of supervision. (Facts, ¶ 13.) Such conclusory assertions of allegedly different treatment are not competent as evidence of discriminatory treatment. *See, e.g., Frankel,* 96 F. Supp.2d at 25-26 (plaintiff's generalized and conclusory allegation of unequal treatment insufficient to support claim at summary judgment stage).

Plaintiff's primary allegation in support of his hostile environment claim – that his manager called him "good boy" – also lacks adequate particularity and would not permit a jury to gauge whether allegedly harassing conduct was frequent or pervasive. Plaintiff could not identify any specific occasion on which he alleged the phrase "good boy" was used except, possibly, a single occasion when he completed a project (that he could not identify) soon after he began reporting to Mr. Bickford. Plaintiff's assertion that the phrase was used some 25 to 50 times is, without any evidence of context or other particulars, so conclusory as to lack evidentiary value. *See Griffin*, 103 F. Supp.2d at 314 (summary judgment allowed when plaintiffs' evidence of alleged racial slurs was so lacking in particularity that it did not offer sufficient facts for a jury to gauge how frequently remarks were made); *see also Feliciano de la Cruz,* 218 F.3d at 5 (conclusory assertions insufficient to defeat properly supported motion for summary judgment).

Further, plaintiff cannot show that the remark of which he complains was made because of his membership in a protected class. Plaintiff has not alleged that anyone in Babson's employ used any unambiguously racial epithet. Plaintiff relies on an occasional (at most) use of the term "good boy" by his manager to support his hostile environment claim. Courts that have considered claims of hostile environment based on allegations similar to those made by plaintiff have rejected them at the summary judgment stage on the grounds that the complaining employee could not show that the occasional use of an ambiguous phrase was because of race and because such allegations did not state claims for a severe or pervasively hostile environment.

The case of *Mack v. Port Authority Of New York and New Jersey,* 225 F. Supp.2d 376 (S.D.N.Y 2002), involved allegations very similar to plaintiff's allegations in this case. In the *Mack* case, the plaintiff alleged that "special attention" was paid to his conduct by his manager;

14

made conclusory assertions of different treatment; and complained that his manager used the term "boy," but testified only to the use of the term "good boy" when plaintiff completed assignments. The *Mack* court held that the alleged conduct of plaintiff's manager did not "rise to the level of being so frequent, severe, threatening, or humiliating as to rise to the level of a hostile work environment claim." *Mack,* 225 F. Supp.2d at 388-389. The *Mack* court allowed summary judgment for the employer because plaintiff's generalized allegations of different treatment were "insufficiently specific to enable a jury to assess objectively the underlying conduct [and that] [t]he specific instances complained of [were] not ones that could reasonably be construed to have altered the conditions of [p]laintiff's employment." *Mack,* 225 F. Supp.2d at 389.

In the case of *Clerge v. Consolidated Edison,* 1999 WL 239688 (S.D.N.Y.), plaintiff alleged that two different supervisors, on a total of three occasions, referred to him as "boy," that a third supervisor "by his actions [] said he was never around black people," and that a flyer with offensive comments about Haitians was left on his desk. The court rejected plaintiff's claims of hostile environment because plaintiff had not proved that "defendant's conduct was because of race and because, to the extent such conduct could be construed as racially tinged, these incidents were not severe or pervasive enough to create an objectively hostile or abuse work environment." *Clerge,* 1999 WL at *3. In the case of *Griffin.,*103 F. Supp.2d at 297, plaintiffs based claims of hostile work environment on allegations that a senior manager did not treat them fairly and made false accusations against African-American employees, "while failing to make the same accusations against similarly situated Caucasian employees" and that defendants had used the phrases "street person," "break up the gang," and "you people." *Griffin,* 103 F. Supp.2d at 309, 314. The court held that the defendants' alleged use of these phrases could "not be

15

deemed inherently racially offensive without greater specificity as to the context of their usage." *See Griffin,* 103 F. Supp.2d at 314. The court granted summary judgment to the employer on plaintiffs' hostile work environment claims on the grounds that isolated remarks that were ambiguous as to discriminatory intent, even if subjectively offensive to an employee, did not amount to severe and pervasive harassment. *Griffin,* 103 F. Supp.2d at 314-315. In cases in which courts have held that use of the word "boy" to an African American employee contributed to a hostile work environment, "boy" has not been used in conjunction with "good," and it has been used in conjunction with other, unambiguously racially derogatory terms. *See, e.g., Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.,* 130 F.3d 349, 352 (8th Cir. 1998) (plaintiff called "black boy," "my little black boy," and "nigger"); *Callicut v. Pepsi Bottling Group, Inc.,* 2002 WL 992757 (D. Minn. 2002) (plaintiffs called "nigger," "blacks," and "boy").

For the reasons set forth in the *Mack, Clerge* and *Griffin* cases, plaintiff's allegations in this case are insufficient to state a claim of hostile work environment, and Babson is entitled to judgment on this claim. *See Mack,* 225 F. Supp.2d at 387-389; *Griffin,* 103 F. Supp.2d at 314-315; *Clerge,* 1999 WL at *3.

**b. Constructive Discharge.** A plaintiff alleging constructive discharge must prove that his employer imposed "working conditions so intolerable [] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Landrau-Romero v. Banco Popular de Puerto Rico,* 212 F.3d 607, 613 (1st Cir. 2000), *quoting Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 46 (1st Cir. 1999). To prevail on a constructive discharge claim, a plaintiff must demonstrate a greater severity or pervasiveness of harassment than is required to prevail on a hostile environment claim. *See Hernandez-Torres v. Intercontinental Trading, Inc.* 158 F.3d 43, 48 (1st Cir. 1998). "[A] plaintiff [who] does not

resign within a reasonable time period after the alleged harassment . . . was not constructively discharged." *Landrau-Romero,* 212 F.3d at 613.

Any claim by plaintiff that his April 29, 2002 departure from the workplace amounted to a constructive discharge fails because plaintiff cannot demonstrate the severity or pervasiveness of harassment required to make out a claim of hostile work environment and cannot, therefore, as a matter of law, make out a claim of constructive discharge. *See, e.g,. Hernandez-Torres,* 158 F.3d at 48.

In addition, plaintiff cannot show that his departure from the workplace was within a reasonable time after the alleged harassment. Plaintiff was told, on or around March 13, 2002, that he would no longer be reporting to Mr. Bickford. (Facts, ¶ 23.) Plaintiff has no evidence of any allegedly harassing communication with Mr. Bickford on or after March 13, 2002. (Facts, ¶ 23.) Plaintiff did not leave the workplace until April 29, 2002, immediately after his interview with Ms. Moore and Mr. Port concerning the complaint made against him by T.J. (Facts, ¶ 46.) No reasonable finder of fact could conclude that plaintiff left the workplace because of alleged harassment when plaintiff had ceased reporting to Mr. Bickford some six to seven weeks earlier and he left the workplace immediately after an interview about a complaint that caused the University of Virginia to inform MassMutual that plaintiff should never again visit the University's campus. (Facts, ¶ 46.) *See Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (11th Cir. 1989) (no constructive discharge found when harassment ended on March 27, 1985 but plaintiff did not resign until April 8, 1985), *quoted with approval in Smith v. Bath Iron Works Corp.,* 943 F.2d 164, 167 (1st Cir. 1991) (no constructive discharge when plaintiff did not resign until six months after last occasion on which offensive graffiti appeared in shipyard).

Because plaintiff cannot prove that his April 29, 2002 departure from the workplace was caused by a hostile work environment, Babson is entitled to judgment on plaintiff's claim of constructive discharge. *See, e.g., Hernandez-Torres,* 158 F.3d at 48; *see also Landrau-Romero,* 212 F.3d at 613.

### 5. Babson Is Entitled To Judgment On Plaintiff's Claims Of Negligent and Intentional Infliction of Emotional Distress Because Babson Did Not Cause Plaintiff's Emotional Distress

To recover for negligent infliction of emotional distress, a plaintiff must prove, among other elements, that the defendant caused the emotional distress of which plaintiff complains. *See Conley v. Romeri,* 60 Mass. App. Ct. 799, 801 (2004); *see also Payton v. Abbott Labs.,* 386 Mass. 540, 557 (1982). To prove a claim of intentional infliction of emotional distress, a plaintiff must prove, among other elements, that the defendant "intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of [its] conduct." *Quinn v. Walsh,* 49 Mass. App. Ct. 696, 706 (2000).

Plaintiff's claims of emotional distress are based on his allegation that an insurance company sent a Caucasian investigator to the church of which he was pastor during its investigation of plaintiff's application for long-term disability benefits.[4] Liberty is the insurer for the LTD Plan. Plaintiff believed in 2002 and 2003 that Liberty, not Babson or MassMutual, was responsible for sending the investigator to the church. (Facts, ¶¶ 54-56.) He developed no competent evidence in discovery to prove that Babson (or MassMutual) was responsible for the act that caused his alleged emotional distress. Accordingly, Babson is entitled to dismissal of these claims.

---

[4] Any claim by plaintiff of intentional or negligent infliction of emotional distress based on events in the workplace would be preempted by the Massachusetts Workers Compensation Act, Mass. Gen. Laws ch. 152, §§ 1 et seq. *See, e.g., Anzalone v. Massachusetts Bay Transp. Auth.,* 403 Mass. 119, 124-125 (1988).

## V.   Conclusion

For the foregoing reasons, Babson is entitled to judgment on all claims in plaintiff's complaint.

The Defendant,
DAVID L. BABSON & COMPANY, INC.
By Its Attorneys:

Dated:  November 4, 2005                /s/ Katherine A. Robertson
                                        Francis D. Dibble, Jr.
                                         BBO No. 123220
                                        Katherine A. Robertson
                                         BBO No. 557609
                                        Bulkley, Richardson and Gelinas, LLP
                                        1500 Main Street, Suite 2700
                                        Springfield, MA  01115-5507
                                        Tel:  (413) 781-2820
                                        Fax: (413) 272-6804

### Certificate of Service

I hereby certify that a true copy of the above document was served electronically upon the attorney of record for each party on November 4, 2005.

                                        /s/ Katherine A. Robertson
                                        Katherine A. Robertson

#304068