UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISAAC WILLIAMS, JR., : | |
|     **Plaintiff** : | |
| v. : | C.A. No. 03 CV 11470 RCL |
| : | |
| MASSACHUSETTS MUTUAL LIFE : | |
| INSURANCE COMPANY (a/k/a : | |
| MASSMUTUAL FINANCIAL GROUP) : | |
| and DAVID L. BABSON & COMPANY, INC. : | |
| (a/k/a DAVID L. BABSON AND COMPANY), : | |
|     **Defendants** : | |

**PLAINTIFF'S MEMORANDUM OF LAW SUPPORTING OBJECTION TO DEFENDANT MASSMUTUAL'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This action is brought by the Plaintiff, Isaac Williams, Jr., seeking redress for unlawful discrimination in employment based on his race, in violation of the Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.*, 42 U.S.C. §1981, *et seq.*, and the Massachusetts Fair Employment Practices Act, M.G.L. ch. 151B §1, *et seq.* ("FEPA"). In addition, the Plaintiff has asserted a claim for Infliction of Mental Distress. (Compl. ¶60) Specifically, the Plaintiff is an African-American who alleges, *inter alia*, that he was hired by Defendant MassMutual Life Insurance Company ("MassMutual") as a vice president, during which time he was performing his job duties as expected. After a corporate re-organization in 2000, the Plaintiff became an employee of Defendant David L. Babson & Company, Inc. ("Babson") and was assigned to report to a Caucasian supervisor who made racist remarks directed toward the Plaintiff, assessed his performance below average, and set unrealistic goals. After receiving the worst performance evaluation of his career in January, 2002, the Plaintiff reported his supervisor's mistreatment to

the human resources department and, shortly thereafter was informed that his position was being eliminated.

Defendant admits only that the Plaintiff is African-American and was hired by MassMutual in 1998, but denies all other allegations relating to the Plaintiff's claim of discrimination.

## II. DESCRIPTION OF MOTION

Defendant MassMutual brings this motion against the Plaintiff seeking summary judgment adopting Babson's arguments made in a separate filing and further seeks summary judgment on the grounds that MassMutual was not the Plaintiff's employer at the pertinent time and therefore, is not subject to liability.

## III. FACTS

At all times during the Plaintiff's employment with Defendants MassMutual/Babson, Nancy Roberts was employed in the corporate human resources department and at the time of the Plaintiff's termination, held the title of Vice President of Corporate Human Resources. (Pl.'s Facts ¶1)  Susan Moore was employed by MassMutual in 1989 as a Human Resources Consultant until her move to Defendant Babson in or around April, 2002. (Pl.'s Facts ¶2)  At or around the time that Ms. Moore moved to Babson, she was supervised by Ms. Roberts. (Pl.'s Facts ¶3)  At or around April, 2002, after Ms. Moore became an employee of Babson, Ms. Roberts continued to provide oversight and counsel to Ms. Moore. (Pl.'s Facts ¶4)  In e-mail correspondences between Ms. Moore and Ms. Roberts in or around early, 2002, the circumstances regarding the elimination the Plaintiff's position at Babson were detailed and included references to discussion with Stu Reese, Babson's CEO. (Pl.'s Facts ¶5)  The affidavit provided by James Masur in support of the Defendant's Motion was not made on his personal

knowledge but with consultation of Defendant's counsel. (Def.'s Facts, Ex. 1) The affidavit provided by Susan Moore in support of the Defendant's Motion, although made of her personal knowledge, fails to identify the business relationship between Defendants, MassMutual and Babson, at or around the time the Plaintiff asserts he was subjected to discriminatory treatment. (Def.'s Facts, Ex. 2)

## IV.  ISSUE

Whether MassMutual can be legally considered the Plaintiff's employer during the time when the Plaintiff asserts he was subjected to discriminatory treatment for purposes of imposing liability on MassMutual.

## V. POINTS AND AUTHORITIES

### A.  Standard of Review in Considering a Motion for Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is *entitled to a judgment as a matter of law*." *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996)(emphasis added); *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991); Fed. R. Civ. P. 56. In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 534 (1st Cir. 1996). "At the summary judgment stage, a Court should ask itself whether the plaintiff could prevail if a jury or judge believed Plaintiff's version of the facts and disbelieved the Defendants' version." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 929 (1st Cir. 1983). It is not the reviewing judge's function to weigh the evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 249 (1986). Accordingly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, the evidence is such that a reasonable jury could return a verdict for the non-moving party when construing all evidence in the record and inferences in favor of that party. *Id.* at 248.

### B. Argument

**THE COURT SHOULD DENY DEFENDANT MASSMUTUAL'S MOTION FOR SUMMARY JUDGMENT BECAUSE IT WAS THE PLAINTIFF'S EMPLOYER DURING THE PERIOD OF TIME THAT THE PLAINTIFF WAS SUBJECT TO DISCRIMINATORY TREATMENT**

Defendant avers that it cannot be held liable to the Plaintiff unless he can prove that MassMutual was his employer during the period of time when the discriminatory acts occurred. (Def.'s Mem. Supp. Summ. J. at 3) In support of its Motion, Defendant appears to have lost sight of the nature of the present Motion by virtue of the fact that its argument creates more questions of fact than it resolves.

To begin with, it is clear from the record that in or around early 2002, the decision was made to eliminate the Plaintiff's position. (Pl.'s Facts ¶5) Defendant MassMutual has selectively disregarded the fact that it was *their* Human Resources personnel who were directly involved in the "behind-the-scenes" activities related to that decision, including direct contact with Mr. Reese and discussions of the details of what would become of the Plaintiff once the decision was communicated to him. There is no evidence presented by Defendant (and none can be readily inferred from its facts) to buttress its assertion that, *during the relevant time period*, Babson was altogether a separate and distinct entity from MassMutual for purposes of liability. Hence, Defendant's arguments as to why the Plaintiff cannot impute liability to MassMutual is built upon a foundation of questionable strength.

4

**Standard for Establishing Liability**

Notwithstanding the factual deficiencies in Defendant's argument, there appears to be no clear legal standard to be applied in this Circuit in order to determine whether a company in MassMutual's position at the relevant time period could be liable for the acts of Babson. *Romano v. U-Haul Int'l*, 233 F.3d 655, 664 (1st Cir. 2000). In *Romano*, the court identified three "recognized" methods for determining whether corporate entities such as MassMutual and Babson in the current case are to be considered a single employer for purposes of Title VII liability: (1) the integrated–enterprise test; (2) the corporate law "sham" test; and (3) the agency test. *Id*. at 665.

    *a. Agency*

In analyzing whether agency principles apply in the present case, Defendant asserts that the Plaintiff cannot demonstrate that MassMutual directed Babson to make any decisions regarding the Plaintiff's employment. (Def.'s Mem. Supp. Summ. J. at 6) However, this is not the legal standard for establishing agency liability. As a general proposition, the Supreme Court has made clear that "Congress wanted courts to look to agency principles for guidance in" the area of employment discrimination law. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986). To that end, the Court stated that, "[i]t is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003).

It is sheer folly for Defendant to assert that from the time the Plaintiff was appointed to a position with Babson in October, 2000, until his termination in March, 2002, that MassMutual had no hand in the Plaintiff's fate. Indeed, there was only a single human resources department

5

involved with the Plaintiff's termination: MassMutual's Human Resources Department. In addition, when the Plaintiff ultimately did report the problems he was having with Bickford (his supervisor), he reported to Susan Moore, human resources consultant for MassMutual. There is no evidence or intimation by Defendant that Babson had its own human resources department during the relevant time period that had anything to do with the Plaintiff's employment and/or termination. The record indicates that the two companies (MassMutual and Babson) were sharing the human resources function at that time, with MassMutual personnel providing the entire service. It's difficult to argue that there exists a more importation function to a company's day-to-day existence and personnel decisions than the human resources department.

Next, Defendant's position that the absence of evidence that MassMutual *directed* Babson to do anything is determinative of its liability under agency theory represents a misapprehension of the governing rules. As the Supreme Court has noted, the "principal/agency relationship demands not only control (or the right to direct or control) but also the manifestation of consent by one person to another that the other shall act on his behalf and consent by the other so to act." Meyer, 537 U.S. at 286 (quoting Restatement (Second) of Agency §1). In the case at bar, the agency relationship is properly characterized a "status based." *See In re Centennial Technologies*, 52 F.Supp.2d 178, 184 (D.Mass. 1999). "This non-authority based vicarious liability rests upon certain important social and commercial policies." *Id*. The imposition of liability onto the principal for the agent's actions stimulates watchfulness in the selection and supervision of the agent. *See Id*. In such cases liability is "often dependent upon the relationship of the social policy to the type of principal/agent circumstance at hand." *Id*. (internal quotation marks omitted).

The Plaintiff avers that the circumstances in the present case warrant imposition of

liability to MassMutual in connection with the Plaintiff's allegations of discrimination. More importantly, for purposes of the present motion, there are abundant questions of fact that preclude summary judgment. Defendant's argument as to why it is not liable under agency law is supported by only a *single* undisputed fact: the Plaintiff's supervisor was a Babson employee. (Def.'s Mem. Supp. Sum. J. at 7) Thereafter, Defendant avers that the decision to eliminate the Plaintiff's position came exclusively from Babson employees. (Def.'s Mem. Supp. Sum. J. at 7) To be sure, this fact is one of the critical *disputed* facts for which the Plaintiff asserts triable issues. (See Pl.'s Mem. Obj. Summ. J. [Babson]) Hence, the mere fact the Plaintiff's supervisor was a Babson employee and not a MassMutual employee is woefully insufficient to preclude agency liability to MassMutual. MassMutual's human resources department, and therefore its management, was inextricably intertwined with the decision to eliminate the Plaintiff's position and was involved in the Plaintiff's destiny up until his last day of employment. Therefore, under agency principles, MassMutual is liable for the discriminatory acts averred by the Plaintiff.

  *b. Integrated Enterprise*

  Defendant, in evaluating the likely outcome should this Court apply the "integrated-enterprise" test, reasserts that no liability can run to MassMutual. (Def.'s Mem. Supp. Summ. J. at 8) In *Romano* the court adopted the majority view held by the circuit courts that "control of employment decisions is a primary consideration in evaluating employer status." 233 F.3d at 666. The court expounded upon this rule and indicated that it would follow a more "flexible" approach when evaluating employment decisions and place the emphasis on "the extent that the parent exerts an *amount of participation that is sufficient and necessary to the total employment process*, even absent total control or ultimate authority over hiring decisions." *Id*.

  To support its position that the integrated-enterprise theory cannot give rise to

MassMutual's liability, Defendant offers factual conclusions of questionable validity. Defendant states that Babson controlled the total employment process for employees at the Plaintiff's level. (Def.'s Mem. Supp. Sum. J. at 8) This conclusion is predicated on an Affidavit of Susan Moore that merely recites the *present* protocols that Babson employs in connection with its employment decisions but speaks of nothing during the relevant time period. (Def. Facts Ex. 2) Unfortunately for Defendant, we are not dealing with evidence of how Babson *presently* conducts its personnel decisions, but how those decisions were reached *at the time giving rise to the Plaintiff's complaints of discrimination*. There is simply no reference to that time period at all. Defendant's attempts to transport the facts in Ms. Moore's affidavit to the past are unavailing and represent a distortion of the record. In short, there is no evidence presented by Defendant that could allow this Court to determine the business relationship between Defendants during the time frame pertinent to the present action.

Conversely, the evidence *does* demonstrate that MassMutual was sufficiently involved with the entire employment process involving the Plaintiff such that the two entities should be considered one for purposes of liability. No reasonable juror could concluded that the Plaintiff was dealing exclusively with Babson during his employment when it is clear from the record that it was MassMutual's Human Resource Department that assisted in the formulation of the Plaintiff's destiny within the organization. On this point, there exists a question of fact. Hence summary judgment is inappropriate.

The final argument presented by Defendant–that MassMutual did not exercise sufficient control over Babson to warrant imposition of liability—is, apart from being a re-hash of its previous argument, predicated on facts gleaned from an affidavit submitted by James Masur. (Def.'s Mem. Supp. Summ. J. at 10-11) Importantly, Mr. Masur's affidavit fails to state that the

facts presented are of his own personal knowledge,[1] instead indicating that the information contained in his affidavit was prepared "in conjunction with counsel to establish certain facts relevant to" the present motion. (Def.'s Facts, Ex. 1) The Plaintiff urges the Court to consider this significant omission as no mere oversight. Would that cases such as the present action were so easily resolved on representations of counsel. Indeed, since Mr. Masur has not provided information on his own knowledge, the Plaintiff is left to speculate as to the source of his information. Moreover, the information that is contained in Masur's affidavit is nothing more than general conclusions about the organizational structure of the businesses and reference to certain activities of employees. Nothing provided by Masur in any way foreclosures the question of whether MassMutual was involved in the discriminatory actions the Plaintiff asserts.

Moreover, the argument presented by Defendant fails to demonstrate why there exists no question of fact for trial. Even if the facts asserted by Masur are taken as true by this Court—which the Plaintiff asserts would be inappropriate—they do nothing to dispel the notion that MassMutual and Babson are jointly liable. Merely reciting the legal corporate structure of the Defendant's organizations is insufficient to support a claim that there exists no question of material fact to determine whether, at the relevant time period, MassMutual was sufficiently involved with the Plaintiff's employment and ultimate termination. Therefore, summary judgment is improper.

## VI. CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that Defendant's Motion for Summary Judgment be denied.

---

[1] *See* Fed.R.Civ.P. 56(e).

ISAAC WILLIAMS, JR.
By his attorney,

/s/ John B. Reilly, Esq.
John B. Reilly, Esq.
BBO #545576
John Reilly & Associates
Summit West - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 739-1800
Fax: (401) 738-0258