The fourth element of the *prima facie* requires reference to all the circumstances surrounding the latter days of the Plaintiff's employment. Based on facts in the record, and viewing same in a light most favorable to the Plaintiff, a jury could reasonably conclude that (1) almost immediately after being placed under Bickford's supervision, the Plaintiff was subjected to racially derogatory comments in the form of being repeatedly referred to as "boy," a fact that Bickford has not denied; (2) despite an exemplary performance review prior to being supervised by Bickford, Bickford's subsequent performance reviews (for years 2001 and 2001) were inconsistent with the fact that the Plaintiff received a substantial bonus and raise in 2001 and a bonus in 2002 as well as verbal assurances throughout his tenure that he was doing a good job; (3) a human resources person was "surprised" to learn of Bickford's evaluation of the Plaintiff; (4) Defendant failed to take the matter seriously in failing to conduct an investigation; (5) in early, 2002, after complaining to human resources that Bickford's references to him as "boy" and his poor performance appraisal, he was informed his position was being eliminated; and (6) that there are inconsistent reasons given by Defendant for the decision to "eliminate" the Plaintiff's position. The aggregate of the foregoing evidence could lead a reasonable jury to conclude that the reason the Plaintiff's position was eliminated was because Defendant simply did not wish to address the racial animosity and unsubstantiated performance reviews given by Bickford to the Plaintiff. The mere fact that there is no clear reason why the Plaintiff's position was eliminated gives rise to a question of fact that should preclude summary judgment on this point. It certainly cannot be concluded as a matter of law that a jury could not reach such a conclusion. Hence, the fourth element is satisfied and the Plaintiff can establish a *prima facie* case of race discrimination.

Defendant makes much of the fact that the person who was ultimately hired to assume

some of the Plaintiff's responsibilities after the Plaintiff left was an African American and, therefore, no inference of discrimination can arise. (Def.'s Mem. Supp. Summ. J. at 9). It appears that Defendant wishes to have its cake and eat it too. Defendant avers that the Plaintiff's position was not filled with another person. (Def.'s Mem. Supp. Summ. J. at 9) But that, even assuming it was, that person, who was from the same protected class, precludes an inference of discrimination. (Def.'s Mem. Supp. Summ. J. at 9) A jury would certainly be free to disregard this evidence or give it whatever weight it sees fit. In *Sinai v. New England Telephone and Telegraph Co.*, 3 F.3d 471 (1st Cir. 1993), the court stated that a jury could determine that the defendant employer's hiring others in the same protected class as plaintiff did not rebut plaintiff's allegation of race discrimination. *Id*. at 474. The court concluded that,

> [t]he relevant issue in a discrimination claim is whether the defendant discriminate[d] against the plaintiff on an improper basis. The fact that the defendant hired other members of the protected class is evidence that the jury can consider in reaching the ultimate issue, but is *not dispositive in itself*. The jury must weigh all of the evidence.

*Id*. (emphasis added). The same rule applies to the present action. It would not be such a great stretch for a jury to conclude that the hiring of an African American to assume many of the Plaintiff's prior job responsibilities was done in an effort to deflect the appearance of bias against members of that class. Whether a jury reaches such a conclusion is not for present consideration. The mere fact that it could reasonably reach such a conclusion precludes summary judgment.

### Defendant's Legitimate Non-Discriminatory Reason

In putting forth an alleged legitimate nondiscriminatory reason for terminating the Plaintiff, Defendant attempts to impress upon the Court that the decision to eliminate the Plaintiff's position was made by Mr. Reese and Mr. McClintock based on an affirmative conclusion that the primary functions of the position were no longer needed. (Def.'s Mem.

2

Supp. Summ. J. at 9-10) Such a conclusion, however, represents an interpretation of the record in *Defendant's* favor and does not reflect facts in the record viewed in a light most favorable to the Plaintiff. As already indicated, Mr. Reese was not even certain that he had any part in the decision to eliminate the Plaintiff's position. Moreover, Mr. McClintock has provided no testimony or affidavits to support the averment by Defendant that he was involved in the decision to eliminate the Plaintiff's job and the criteria considered to reach that decision. Additionally, Bickford testified that, "[w]e felt Mr. Williams was not performing to the level that we wanted him to perform and that coincided with the reason for eliminating the position altogether." (Pl.'s Facts ¶54) Defendant has conspicuously opted to ignore this testimony; however its impact cannot be evaded. Bickford's testimony indicates that he was indeed involved in the decision to eliminate the Plaintiff's position and that such decision was predicated on the Plaintiff's performance. Hence, a question of material fact exists: was the Plaintiff's position eliminated because of performance or because of a reduced need? At this stage, the mere existence of such a question precludes summary judgment.

### **Pretext**

The inconsistent reasons presented by Defendant to support its decision to eliminate the Plaintiff's position leaves the Plaintiff rudderless when deciding how to address the two purported reasons. One way that a plaintiff employee may demonstrate that the employer's purported legitimate nondiscriminatory reasons for its employment decision are merely a pretext is to show,

> [s]uch weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and [with or without additional evidence and inferences properly drawn therefrom] infer that the employer did not act for the asserted non-discriminatory reasons.

3

*Ianetta v. Putnam Investments, Inc.*, 183 F.Supp. 2d 415, 425 (D.Mass. 2002)(citations omitted)(brackets in original). Applying the foregoing to the facts of the case at bar, Defendant has offered that its primary legitimate non-discriminatory reason for its decision to terminate the Plaintiff's position was lack of need for the duties. (Def.'s Mem. Supp. Summ. J. at 10) However, there is a dearth of facts presented by Defendant to demonstrate how that decision was made and upon what rationale it was based. The closest thing to an explanation is Reese's recollection that the Plaintiff's position was eliminated because there really wasn't a need for his role as it existed at that time. (Def.'s Mem. Supp. Summ. J. at 10) However, he does not recall if he was involved in the decision, giving rise to doubt about his recollection. (Pl.'s facts ¶58) In fact, Defendant has failed to produce any evidence that affirmatively demonstrates the genesis of the decision to eliminate the Plaintiff's position and the underlying reasons therefor. Defendant's corporate representative testified that the decision to eliminate the position "*would have been* a collaborative decision between Kevin McClintock and Stu Reese." (Def.'s Facts ¶20) However, she was unaware of where the decision originated. (Def.'s Facts ¶20). She further testified that Bickford would have had input into the decision. (Def.'s Facts ¶20) Such indefinite and vague support for a decision as critical as the elimination of an executive-level position certainly raises an eyebrow as to what actually took place behind the scenes, when it occurred, and who was involved. Such weaknesses in Defendant's proffered reasons could certainly be viewed by a rational jury as evidence of pretext.

      Coupling the "no longer a need" reason (the corporate party line) with the "performance" reason testified to by Bickford, a jury could certainly view these inconsistent offers as further evidence of pretext. In summary, the issue of pretext is rife with factual questions which at the summary judgment stage, are too numerous to warrant dismissal.

*b. Hostile Work Environment*

In addition to the elimination of the Plaintiff's position as a discrete act of discrimination, the Plaintiff has set forth facts sufficient for a reasonable jury to conclude that he was subjected to a hostile work environment. "An employee states a claim under Title VII if he alleges offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000). When considering whether a work environment is hostile or abusive, *all the circumstances* must be reviewed. *Id*. These circumstances "may include the frequency of the discriminatory conduct; it severity; whether it is physically threatening or humiliating, or a more offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.

Critical to evaluating whether the Plaintiff was subjected to ongoing verbally derogatory comments is the fact that Bickford, the Plaintiff's supervisor, does not deny that he referred to the Plaintiff as "boy."[1] Defendant's corporate representative testified that such a reference as to African Americans could be considered a racial slur. (Pl.'s Facts ¶18) It requires no detailed analysis to conclude that a Caucasian supervisor who repeatedly refers to one of his African American charges as "boy" has created an objectively hostile work environment. Certainly, the Plaintiff was subjectively offended by this as he ultimately saw fit to make a report to the human resources department.

Accompanying the racial slurs were two consecutive performance appraisals with

---

[1] It seems utterly improbable that Bickford would be unable to recall whether he referred to the Plaintiff as "boy" while acting as his supervisor. A reasonable jury could certainly conclude that had he not used such a derogatory reference, he would desire to dispel that notion with a vehement denial.

5

decreasing ratings. Although the Plaintiff agrees that there is nothing "inherently discriminatory about" unfavorable performance appraisals, (Def.'s Mem. Supp., Summ. J. at 13), when combined with a series of ongoing verbal abuse and culminated with a decision of questionable origin and purpose (in which the offending supervisors participated) to eliminate the Plaintiff's position, the totality of the circumstances demonstrate sufficient evidence for a jury to conclude that the Plaintiff had been subjected to a hostile work environment. Contrary to Defendant's position that the foregoing cumulative actions are "conclusory assertions of allegedly different treatment," (Def.'s Mem. Supp. Summ/. J. at 13), such actions unquestionably qualify as creating both an objective and subjective hostile work environment.

Defendant next attempts to square the facts of the present case with those in *Mack v. Port Authority of N.Y. & N.J.*, 225 F.Supp.2d 376 (S.D.N.Y. 2002), for the proposition that a supervisor's use of the word "boy" directed toward an African American employee is not sufficient to deflect summary judgment. (Def.'s Mem. Supp. Summ. J. at 15) In *Mack*, the plaintiff "made vague and conclusory assertions of disrespect, disdain, and generally hostile work environment" to which he and other non-white employees were subjected by the employer's white personnel. *Mack* at 384. The plaintiff in *Mack* was actually promoted under the supervisor who he alleged was the primary offender, despite having twice tested positive for cocaine prior to the promotion. *Id*. at 380. Ultimately, the plaintiff was terminated for failing to submit to a third drug test. *Id*. at 381. The court granted summary judgment after concluding that the plaintiff's "generalize assertions [were] insufficient to frame a material issue of fact." Clearly the present action is not analogous to *Mack*. The Plaintiff in the case at bar, although being unable to recall precisely each instance in which Bickford referred to him as "boy" did report the conduct to human resources and also has presented additional facts (e.g., the

6

performance appraisals and a vaguely substantiated decision to eliminate his position) that make it factually distinguishable from *Mack* in many salient respects.

Defendant next turns to *Clerge v. Consolidated Edison*, 1999 WL239688 (S.D.N.Y.) to further buttress its argument that summary judgment is warranted. (Def.'s Mem. Supp. Summ. J. at 15) In *Clerge*, the court noted that the total quantum of evidence presented by the plaintiff was that (1) one time a supervisor referred to him as "boy"; (2) that another supervisor one time stated "Boy, didn't I tell you to do that?"; (3) a third supervisor, by his actions, said he had never been around black people; and (4) a flyer had been left on his desk which referenced negative remarks about Haitians made by a radio personality. *Clerge* at *3. To be sure, on the facts present in *Clerge*, it would seem that summary judgment was warranted. However, as with *Mack*, the only similarity between present case and *Clerge* is the fact that there was the use of the word "boy." Simply citing to cases where a white supervisor may have used the term "boy" does not abrogate the need to view all the attendant circumstances to determine whether a hostile work environment could be found to exist. Indeed, the body of evidence in the case presently before the court is of a sufficiently greater sum than that present in the foregoing cases cited by Defendant.

*c. Constructive Discharge*

The final theory of discrimination which applies to the facts of the present action is constructive discharge. In order for the Plaintiff to prove constructive discharge, he must demonstrate "that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to forsake his job rather than submit to looming indignities." *Landrau-Romero*, 212 F.3d at 613 (internal quotation marks and citations omitted). A review of the Plaintiff's medical records for April 29, 2002, reveals the severity of the harassment he was

7

suffering. The records indicate that the Plaintiff had reported to his doctor that he was suffering from "increasing work stress in what appears to be a hostile intolerant environment especially with respect to issues of diversity." (Pl.'s Facts ¶19) This certainly is evidence of the degree to which the Plaintiff was being harassed. Defendant's argument that the Plaintiff cannot show the severity or pervasiveness of the harassment fails to acknowledge the mental damage suffered by the Plaintiff.

Defendant is correct that the Plaintiff left the workplace on or about April 29, 2002. (Def.'s at 17) However, Defendant is *in*correct to assert that the Plaintiff did not leave the workplace within a reasonable time after the alleged harassment. As already indicated, the Plaintiff perceived the April 26, 2002, interview regarding the allegations of improper conduct as merely one in a series of events that comprised the hostile work environment. A jury should be allowed to hear this evidence of this to determine for themselves whether the April, 2002, meeting was sufficiently related to the ongoing harassment to have been the trigger that finally pushed the Plaintiff out the door.

### 3. IN LIGHT OF EVIDENCE ELICITED DURING DISCOVERY THE PLAINTIFF ASSENTS TO DISMISSAL OF HIS CLAIMS FOR INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT

With discovery having been completed, it does appear that the actions of the insurance investigator as asserted in the Plaintiff's Complaint were not directly related to any action on Defendant's behalf. Hence the Plaintiff agrees that any such claim would be properly under the purview of the Massachusetts Workers Compensation Act and as such, assents to its dismissal.

### VI. CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully prays that Defendant's Motion for Summary Judgment be denied.

ISAAC WILLIAMS, JR.
By his attorney,

/s/ John B. Reilly, Esq.
John B. Reilly, Esq.
BBO #545576
John Reilly & Associates
Summit West - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 739-1800
Fax: (401) 738-0258