UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ISAAC WILLIAMS, JR.

     v.                                                          C.A. No. 03 CV 11470 MAP

DAVID L. BABSON & COMPANY, INC.
(a/k/a DAVID L. BABSON AND COMPANY)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION IN LIMINE
RESPECTING EVIDENCE OF ALLEGED "INAPPROPRIATE" BEHAVIOR
INVOLVING STUDENT AT UNIVERSITY OF VIRGINIA**

## I.  INTRODUCTION

Isaac Williams, Jr. ("Williams") has moved, *in limine,* to prevent David L. Babson & Company, Inc., a/k/a David L. Babson and Company, ("Babson") from referring to or offering evidence concerning alleged "inappropriate conduct" by Williams with respect to a University of Virginia student (the "Virginia incident").  He offers this memorandum in support of his motion, contending that such evidence is irrelevant and that its probative value is substantially outweighed by its likely prejudicial effect.

## II.  BACKGROUND

Williams, an African-American man, originally brought this action against defendants Massachusetts Mutual Life Insurance Company, a/k/a MassMutual Financial Group, ("MassMutual") and Babson alleging racial discrimination in employment, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e. *et seq.*, 42 U.S.C. § 1981 *et seq.*, and the Massachusetts Fair Employment Practices Act, M.G.L. ch. 151B §1 *et seq.*  Specifically, Williams alleged that he was hired by MassMutual as a Vice President, during which time he was performing his job duties as expected. After a corporate re-organization in 2000, Williams

1

became a Babson employee and was assigned to report to a Caucasian supervisor who made racist remarks directed toward Williams, assessed his performance below average, and set unrealistic goals. After receiving the worst performance evaluation of his career in January, 2002, Williams reported his supervisor's mistreatment to the Human Resources Department and, shortly thereafter, was informed that his position (i.e., not merely Williams, but the office which he filled) was being "eliminated".

As this Court found in its recent "Memorandum Regarding Defendants' Motions for Summary Judgment" (Docket #100), "[o]n or about March 13, 2003, Plaintiff was notified that his position was being eliminated" and was provided "four to six months notice." *Id*. at 8:9-13. ["*Summary Judgment Memo*].  However, the Court found that plaintiff left on medical leave in April, 2002,[1] and his "employment was terminated on December 13, 2002, when he was approved for long-term disability benefits." *Id*. at 10:16-18.

On September 29, 2006, this Court granted summary judgment, in Babson's favor, on all "constructive discharge" aspects of Williams' claims.  Furthermore, it dismissed all claims against MassMutual.  See "Memorandum and Order Regarding Defendant MassMutual's Motion for Summary Judgment; Defendants' Motion to Preclude Testimony, and Defendant Babson's Motion to Strike," (Docket #90) [the "*Summary Judgment Order*"].  Therefore, the only claims that remain are those for damages based upon hostile work environment, changed employment conditions, mental and emotional distress, retaliation, and racial discrimination culminating in the termination of which Williams was notified on March 13, 2002.

---

[1] More specifically, the Court found that Plaintiff "left the workplace permanently on April 29, 2002. . . ."  *Id*. at p. 17, ll. 2-4.

### III.  THE "VIRGINIA INCIDENT"

During the course of discovery in this matter, Williams propounded Interrogatories upon Babson, including the following question:

> 11.  Please state the basis and set forth those facts (not legal conclusions nor the opinions of your attorneys) upon which you rely in support of your Third Defense that " [i]f plaintiff was damaged as alleged, which (you) deny, his damages were proximately caused by his own acts or omissions."

Babson's response to this Interrogatory referred to an investigation being conducted by MassMutual with respect to an alleged incident concerning a student at the University of Virginia, to wit:

> Plaintiff did not complain of discrimination or harassment during his tenure as a Babson employee.  He went out of work on a medical leave during an investigation *of a complaint* of inappropriate conduct made about him *to MassMutual* concerning a student at the University of Virginia and did not return to work.  Plaintiff was terminated as a Babson employee when Liberty Mutual allowed his claim for long-term disability benefits.

"*Answers and Objections to First Set of Interrogatories of Plaintiff, Isaac Williams, Jr., Addressed to Defendant, David L. Babson & Company*," No. 11) (emphasis added).  [*Babson's Answers*].  By this response, Babson admits that the alleged incident related to a complaint made to MassMutual, and that Williams was "terminated" not because of the "Virginia incident" but, rather, due to his eligibility for long-term disability benefits.

The proposition that Williams' visit to the University of Virginia was undertaken for recruiting purposes solely at the behest of MassMutual is also supported by an affidavit of MassMutual's Vice President of Human Resources, Debra Wojcik.  {"*Wojcik Affidavit*"]  (This affidavit was submitted as Exhibit 9, in support of "Babson's Statement of Material Facts Not in Dispute" (Docket No. 72)).  In her affidavit, Ms. Wojcik attests, *inter alia* that Williams was

present at the University "as a representative of the *MassMutual* family of companies." *Wojcik*

*Affidavit*, at ¶ 5 (emphasis added).  Babson was a member, but that "family" included several

other entities as well and Williams understood he was there to recruit for "MassMutual".  The

focus of the Virginia trip was <u>MassMutual</u> recruiting and as the Court has correctly noted, the

Virginia trip took place in <u>February 2002</u>, Williams' "job elimination" was noticed on <u>March 13</u>,

<u>2002</u>, and <u>MassMutual</u> was first advised of alleged issues relating to the Virginia trip on <u>March</u>

<u>27</u>, <u>2002</u> (i.e., <u>after</u> the "job elimination notice).

## IV. ARGUMENT

A)    **EVIDENCE REGARDING THE "VIRGINIA INCIDENT" IS IRRELEVANT BECAUSE IT POST-DATES WILLIAMS' TERMINATION AND WILLIAMS DOES NOT RELY UPON IT IN SUPPORT OF HIS CLAIMS.**

Williams' Complaint does not allege or rely upon the University of Virginia incident or

any "investigation" conducted with respect thereto for any claims <u>except</u> the constructive

discharge claim.  In its recent decision, this Court has recited Williams' contention "that a jury

might also find the episode was blown out of proportion to pressure him to resign." *Summary*

*Judgment Memo* 10:1-2.  That argument was advanced by Williams at a time when (and in the

context of) his objection to MassMutual's summary judgment motion.  However, the Court

subsequently granted summary judgment, dismissing MassMutual, and the remaining claims

(against Babson) rely upon acts that occurred prior to, and culminated in, the alleged

"elimination" of his position in March 2002.

Williams alleges that the "elimination" was a pretext, actually based on racial animus and

retaliation for Williams's attempts to address <u>prior</u> incidents where a supervisor made racially-

motivated remarks.  Paragraph 25 of the Complaint alleges that it was on March 13, 2002, that

Plaintiff learned his job was going to be eliminated.  *See also Summary Judgment Memo*, at 8:9-

13).  However, Babson employee Debra Wojcik's Affidavit attests that the alleged "Virginia investigation" did not begin until <u>after</u> this elimination, on or around March 28, 2002.  *Wojcik Affidavit* at ¶ 2.  Furthermore, this Court has observed that on April 26, 2002, Plaintiff met with two MassMutual employees. . . to discuss the UVA allegations.  *Summary Judgment Memo*, at 9:18-20.  Thus, the alleged "Virginia incident" investigation occurred well after Plaintiff was informed that his position with Babson was terminated.

Because those claims of the Complaint that have survived summary judgment rely upon events that occurred <u>prior to</u> the alleged "Virginia incident," evidence relating to that incident is entirely irrelevant.


**B)    EVIDENCE REGARDING THE "VIRGINIA INCIDENT" IS IRRELEVANT BECAUSE IT POST-DATES WILLIAMS' TERMINATION AND BABSON DID NOT RELY UPON IT, NOR COULD HAVE RELIED UPON IT.**

Babson has never alleged that it terminated or *would have terminated* Williams (or "eliminated" his position) on the basis of the alleged "Virginia incident."   Instead, Babson has asserted that

> [t]he decision to eliminate plaintiff's position was made collaboratively by Kevin McClintock, a managing director of Babson with responsibility for sales, marketing, client services and equities management, and Stuart Reese, Chief Executive Officer of Babson, *based on the needs of Babson at the time and the role and skill set that plaintiff had relative to Babson's needs at the time*).

"Babson's Statement of Material Facts Not in Dispute," at p. 7, ¶ 19 (citing the Rule 30(b)(6) Deposition of Babson, pp. 10-12, and the Deposition of Stuart Reese, pp. 57-59) (emphasis added).[2]   This Court has noted this reliance and, also, the testimony of Babson employee,

---

[2]  "Babson's Statement of Material Facts Not in Dispute," can be found on the Court Docket, at Document No. 72.

Edward Bickford, that "[w]e felt Mr. Williams was not performing to the level we wanted him to perform and that coincided with the reason for elimination the position altogether." *Summary Judgment Memo*, 7: 17-20 (citing Bickford Dep. 186:14 – 189:5).

Under the circumstances – and by virtue of its sworn Interrogatory Answers and successful motions for summary judgment – Babson is both factually and judicially estopped from claiming that Williams's dismissal was due to the "Virginia incident." *See*, *e.g.*, *Warren v. Prejean* 301 F.3d 893, 905 (8th Cir., 2002) (in Title VII case alleging retaliation, pretext and gender discrimination, court properly excluded testimony regarding employee's misconduct where the testimony related to after-acquired information that was not a part of the employer's decision to terminate the plaintiff); *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545 (10th Cir.), *cert. denied*, 528 U.S. 813 (1999) (excluding after-acquired evidence of misconduct in case where plaintiff alleged wrongful terminated in retaliation for his filing and pursuing a claim of race-based discrimination); *McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 362-363 (1995) (where employer discovered misconduct only after discharging employee in violation of the Age Discrimination in Employment Act, employer could use evidence *only at remedial stage* and only upon proving that wrongdoing was "of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge).

In fact, Babson's position that it terminated Williams only because of the "elimination" of his company position, rather than the alleged "Virginia incident" makes sense. Babson could not possibly allege that it terminated Williams because of the "Virginia incident" because (as indicated above) Williams was present in Virginia at the behest of MassMutual, not Babson. Moreover, on September 29, 2006, this Court concluded that "Massmutual did not employ

Plaintiff and cannot be found to be legally responsible for any alleged discrimination suffered by him." *See Summary Judgment Order* at p. 2.[3] Therefore, because this Court has already found that MassMutual was not related to Williams' employment with Babson, Babson cannot rely upon Williams' acts <u>as a</u> <u>representative</u> <u>of</u> <u>MassMutual</u> as a justification for his termination or its other adverse actions.[4]

**C)    EVIDENCE REGARDING THE "VIRGINIA INCIDENT" IS IRRELEVANT BECAUSE BABSON HAS NOT OFFERED EVIDENCE TO PROVIDE A SUFFICIENT BASIS TO ADMIT IT.**

In light of the foregoing, Plaintiff submits that any evidence regarding the alleged University of Virginia incident is irrelevant to this case or Babson's defense thereof.  Moreover, Babson has not provided any evidence during discovery that would provide a proper basis to admit the evidence.  In cases were wrongful termination is at issue, evidence of subsequently discovered misconduct may be admissible only at the damages stage and only upon proving that wrongdoing was committed and that it was "of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon*, 513 U.S. at 362-363.  In this case, Babson has not alleged that it would *ever* have terminated Plaintiff because of the alleged "Virginia incident."  Nor has it submitted <u>any</u> evidence that Plaintiff was actually guilty of misconduct or that the misconduct was so severe that it would have justified his termination.  The only evidence produced during discovery is that there was an "investigation."  This investigation, however, led nowhere.  In fact, although the investigation began in March, 2002, Plaintiff's employment was only "terminated on

---

[3] Williams' Virginia trip at MassMutual's behest can be viewed as demonstrating otherwise, or, at the very least, a "borrowed servant" situation.

[4] It is worth reiterating that even if Babson was relying on the "Virginia incident" to claim that it might have terminated Williams in the future (which it is not) – and even if it could do so despite that Williams was employed by MassMutual at that time (which it can not) – evidence regarding the "Virginia incident" is irrelevant because constructive discharge is no longer an issue in this case.  *See Summary Judgment Order*, at p. 2. Therefore, any allegation that Babson might have eventually terminated Williams because of the alleged "Virginia incident" is irrelevant per the U.S. Supreme Court's decision in *McKennon*, *supra*.

December 13, 2002, when he was approved for long-term disability benefits."    *Summary Judgment Memo*. at 10:16-18.    Had the "Virginia incident" constituted sufficient grounds to terminate Plaintiff, Babson had over 8 months to do so, yet did not do so.

Assuming (for the sake of argument) that evidence of the "Virginia incident" might otherwise have some relevance, Williams submits that the prejudicial effect of such "evidence" substantially outweighs its hypothetical relevance.    "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." *Fed. R. Evid.* 404.    Where a limited exception applies to admit evidence of a bad act, the act must tend to prove a material point, there must be "sufficient evidence to support a finding that the defendant committed the act," and the act must be "similar to the offense charged."    *U.S.. v. Maxakuli*, 945 F.2d 409, 409 (9th Cir. 1991).    None of these requirements are met here:

- Absent a constructive discharge claim, evidence regarding the "Virginia incident" would be relevant only to demonstrating that Mr. Williams' is a bad or unsympathetic man.  *Cf. Summary judgment Memo*, 9:23-24 ("this incident may not present Plaintiff, in a jury's eyes, in a particularly flattering light. . . ."). This is not a "material point." This is made clear by the fact that the "Virginia incident" is not being compared to some other incident – there is no issue of propensity, *modus operandi*, opportunity, or predisposition.

- There is no "similar offense" that the defendants can compare the alleged "Virginia incident" to.  The defendants have <u>never</u> produced, in the course of discovery, <u>any</u> evidence that would support the conclusion that Williams was guilty of any misconduct. *See also McKennon*, 513 U.S. at 362-363 (employer who seeks to introduce evidence of subsequent misconduct bears burden of proving fact of wrongdoing <u>and</u> that wrongdoing was "of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge").

Plaintiff submits, therefore, that evidence regarding the alleged "Virginia incident" is inadmissible character evidence and, further, that any relevance is substantially outweighed by the likely prejudicial effect of the evidence.  *See Fed. R. Civ. P*. 403.

## CONCLUSION

For the foregoing reasons, Williams respectfully requests that this Court GRANT and ALLOW the "Plaintiff's Motion In Limine Respecting Evidence of Alleged "Inappropriate" Behavior Involving Student at University of Virginia."


ISAAC WILLIAMS, JR.
By his attorney,


/s/ John B. Reilly, Esq.
John B. Reilly, Esq.
BBO #545576
John Reilly & Associates
Summit West - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886
(401) 739-1800
Fax: (401) 738-0258


Dated:  March 7th, 2007


## CERTIFICATION

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 7th, 2007.


/s/ John B. Reilly, Esq.